Dennis WONICA, Plaintiff,

v.

**SECRETARY OF The DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant.**

**No. CV–90–1867.**

United States District Court,
E.D. New York.

Sept. 19, 1991.

Kevin Michael Elford, Staten Island, N.Y., for plaintiff.

Andrew J. Maloney, U.S. Atty., E.D.N.Y. by Michelle J. Ritholz, Brooklyn, N.Y., for defendant.

## MEMORANDUM AND ORDER

SIFTON, District Judge.

This is a motion to review a final determination of the Secretary of Health and Human Services ordering cessation of Social Security benefits to the plaintiff. The record before the administrative agency establishes the following.

Plaintiff, Dennis Wonica, was found to be eligible for social security benefits due to a herniated lumbar disc as of October 1982. However, based on information received thereafter that the plaintiff had been receiving income in excess of $300 per month as a result of his work as a real estate sales agent, the Secretary ordered plaintiff's benefits terminated. At plaintiff's request, a hearing was held with respect to the termination before an administrative law judge at which plaintiff testified to the circumstances surrounding his "employment."

Plaintiff stated that his efforts on behalf of the real estate agency owned by his brother consisted of working one or two hours weekly on the telephone from his home taking listings from clients. Plaintiff testified that he did not solicit business or "show" houses for sale. When a home he

listed was sold through the efforts of another agent, the plaintiff would share in the commission. In 1985 and 1986, plaintiff testified, he earned $7,635 and $30,646, the exact amount being somewhat unclear on this record. In any event, no one disputes that the commissions averaged more than $300 per month.

The ALJ determined the facts and resolved certain legal issues which I will deal with later in the opinion. The ALJ found, inter alia, that the plaintiff's testimony "lacked credibility at several points, with clear contradictions in facts and obviously self-serving statements, plus a general lack of candor beyond the elementary facts." Tr. p. 12. The ALJ held that, notwithstanding a lack of improvement in plaintiff's medical condition, "the claimant's work activity as a licensed real estate person with commissions from listings averaging over $300.00 a month constituted substantial gainful activity." Tr. p. 13. Plaintiff's benefits were accordingly terminated.

On April 4, 1990, the appeals council denied review of the ALJ's decision, thereby making the opinion a final determination. This action ensued.

### DISCUSSION

The plaintiff raises three issues in this action, the first relating to the Secretary's factual findings; the second involves the defendant's alleged failure to follow its own regulations on reinstating benefits; and the third concerns the effect of administrative res judicata as establishing a right to uninterrupted benefits. I will deal with these issues separately.

■ Plaintiff's principal contention is that the ALJ's determination that benefits should cease in light of plaintiff's substantial gainful activity as a real estate agent was not supported by substantial evidence. Of course, a district court must accept the findings of the Secretary as "conclusive" unless they are not supported by "substantial evidence." 42 U.S.C. § 405(g). In Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), the Supreme Court held that "substantial evidence" means " 'more than a mere scintilla

... [i.e.] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Id. at 401, 91 S.Ct. at 1427 (citations omitted). Thus, the standard of review of the ALJ's factual findings is quite deferential.

■ As a general matter, a person's benefits may be discontinued where the Secretary determines the person no longer disabled. 20 C.F.R. § 404.1520(b). This determination may rest on a finding that the claimant has performed "substantial gainful activity," 42 U.S.C. § 423(d)(4), as that phrase is defined by the Secretary. Under the regulation covering the years 1979–1989, where a claimant earns in excess of $300 per month, 20 C.F.R. § 404.-1574(b)(2)(vi), a rebuttable presumption arises that the claimant is no longer "disabled" for the purpose of obtaining benefits.

Plaintiff argues that the Secretary's decision was not supported by "substantial evidence" because the presumption raised by the amount of money plaintiff earned was rebutted by evidence that plaintiff's medical condition had not changed since he was initially awarded benefits. In short, plaintiff contends that a person can rebut the presumption of "substantial gainful activity" by demonstrating an ongoing and severe medical condition. Plaintiff relies on Hanes v. Celebrezze, 337 F.2d 209 (4th Cir.1964).

■ Plaintiff's reliance on Hanes is misplaced. In Hedge v. Richardson, 458 F.2d 1065, 1067 (10th Cir.1972), the court held that "[o]ne of the purposes of the 1967 amendments [to the Social Security Act] was to overcome the effect of decisions like Hanes ... and to give the Secretary definite authority to specifically provide the amount of earnings which will amount to substantial gainful activity." The regulations promulgated by the Secretary pursuant to the 1967 amendments make clear that an ongoing medical condition is not regarded as an appropriate counterbalance to the presumption. In evaluating a disability, the regulations state that "if the work [the claimant is] doing is substantial

gainful activity, we will find that [the claimant is] not disabled regardless of [his/ her] medical condition." 20 C.F.R. § 404.- 1520(b). What evidence of income demonstrates, absent appropriate rebuttal, is the lack of disabling effects of the illness, not that the illness or medical condition has itself altered.

■ Although the mere existence of a continuing and severe medical condition cannot rebut the presumption that a person earning more than the specified amount is performing "substantial gainful activity," the social security regulations do contemplate the Secretary considering "how well" a claimant does his or her work in determining whether or not "substantial gainful activity" has been performed. 20 C.F.R. § 404.1573(b). In particular, the regulation provides:

"If you are unable, because of your impairments, to do ordinary or simple tasks satisfactorily without more supervision or assistance than is usually given other people doing similar work, this may show that you are not working at the substantial gainful activity level."

*Id.* Thus, as some courts have put it, "[t]he regulations as written and the case law construing these regulations define 'substantial gainful activity' as consisting of two distinct, albeit interrelated, components: compensation and the substantiality of the activity itself." *Patane v. Harris,* 507 F.Supp. 115, 117 (E.D.N.Y.1981).

The plaintiff contends that the nature of the activity he engaged in, as he himself describes it, rebuts the presumption that his work constituted "substantial gainful activity." He points in particular to his testimony that he was not able to perform some tasks that other real estate agents performed such as showing houses to clients, meeting the public, and soliciting listings and instead spent only an hour or two taking phone calls at his home. Moreover, plaintiff noted that his income was "sporadic" and represented "profits" in the form of commissions rather than regular wages. Further, plaintiff draws attention to his testimony that his wife assisted him in performing the tasks he did.

■ This argument addresses itself to the requirement that in order to be found not disabled there must be evidence that there are available positions in the economy which the plaintiff can perform despite his disability. The ALJ took the fact that plaintiff was performing valuable work for which he was being paid as substantial evidence that plaintiff's arrangements with his brother were not unique in the real estate business. The ALJ found that "it has not been shown that such a practice is unknown in the trade, or that the claimant was paid on a different basis than other licensed salesperson(s)." Tr. p. 11. Plaintiff's argument that his income constituted sporadic profits does not establish his job as unique, as the ALJ found. "[S]poradic payments for a listing resulting in a sale ... is common to real estate sales." Tr. at 13. The fact that the plaintiff was paid commissions rather than wages is, of course, of no significance under the regulations. 20 C.F.R. § 404.1572(b) (substantial gainful activity is work done for "pay or profit"). Finally, the ALJ rejected plaintiff's testimony that he needed the assistance of his wife to perform work-related tasks, the testimony of the wife being "noticed in its absence." Tr. p. 12. These elements, taken together with the ALJ's finding that the plaintiff was less than candid in his testimony, indicate that there was "substantial evidence" that plaintiff engaged in "substantial gainful activity."

Plaintiff's next argues that he was entitled to reinstatement of his benefits upon ceasing to do "substantial gainful activity." I begin with a statement of the relevant regulation:

"The re-entitlement period is an additional period after 9 months of trial work during which you may continue to test your ability to work if you have a disabling impairment. You will not be paid benefits for any month, after the third month, in this period in which you do substantial gainful activity and you will be paid benefits for months in which you do not do substantial gainful activity.... If your benefits are stopped because you do substantial gainful activity, they may

be started again without a new application and a new determination of disability if you discontinue doing substantial gainful activity during this period."

20 C.F.R. § 404.1592a(a). The re-entitlement period begins the first day of the month after the completion of the trial work period and ends on the last day of the fifteenth month following. 20 C.F.R. § 404.1592a(b).

 The ALJ found and it is not disputed that the plaintiff's trial work period ended prior to October 1985. The re-entitlement period therefore ran, under the applicable regulations, from October 1985 through the end of December 1986. Whether or not the plaintiff was entitled to reinstatement of benefits depends upon whether he stopped performing substantial work during this period of time.

By his own testimony, the plaintiff states he ceased doing "substantial gainful activity" "after 1986." In his most explicit reference to the date when this work stopped, plaintiff states that his "record of income receipt ... shows no income starting in 1987." Plaintiff's Memorandum of Law, p. 22. On its face, this would seem to demonstrate that Wonica ceased performing substantial gainful activity after the end of the re-entitlement period in December 1986. That being the case, plaintiff would not be entitled to immediate reinstatement of benefits at the time he gave up his work activity.

At oral argument, plaintiff made a slightly different argument. He suggested that, in determining that plaintiff was not entitled to automatic reinstatement of benefits under 20 C.F.R. § 404.1592a(a), the Social Security Administration misapplied the information about the receipt of substantial income by the plaintiff. Specifically, plaintiff contends that the SSA averaged the real estate income that plaintiff received over twelve months, inclusive of the re-entitlement period, rather than making a factual finding as to what income was received in a particular month. If plaintiff did not receive outside income during the last month of the re-entitlement period, even if his income over that entire year

raised a presumption of "substantial gainful activity," he would be entitled to automatic reinstatement of benefits. In short, the plaintiff argues that the SSA impermissibly assumed that, because his overall income gave rise to a presumption, Wonica must have received income in the last month of 1986.

 Plaintiff's reading of the statute is sound. The fact that Wonica may have averaged more than $300 per month in income throughout the re-entitlement period is of no import since the relevant inquiry is whether the plaintiff received income in December 1986. If he did not, then he would be entitled to automatic reinstatement of benefits without having to file a new application. However, on this motion plaintiff fails to supply the Court with evidence that this is the case. In the record furnished to the ALJ, the only form which directly relates to plaintiff's 1986 income is a miscellaneous tax form 1099–MISC. That document only reflects the aggregate income for the year and does not state the months in which it was received. Accordingly, on this record, since the burden is on the plaintiff to establish his entitlement to immediate reinstatement, the determination of the Secretary that plaintiff has not established his entitlement to reinstatement must be affirmed.

 Finally, plaintiff relies on two letters sent to him by the Social Security Administration as having *res judicata* effect on the issue of eligibility for benefits. In January 1988, a year and a half prior to the ALJ's determination discussed *supra*, the plaintiff received a letter from the SSA stating that a disability hearing officer concluded that the plaintiff's "disability did not end" and that the plaintiff was entitled to continuing benefits. Plaintiff asserts and the defendant does not dispute that this letter concerns the "claimant's activity in 1985." The issue, however, is somewhat unclear. The 1988 hearing officer's report, which is part of the overall transcript, reflects analysis by plaintiff's doctor of the plaintiff's condition in 1987. In addition, plaintiff points to a second letter he received from the SSA dated April 20, 1988,

which states essentially the same thing. Plaintiff argues from these letters that the defendant should be bound by this 1988 ruling, which predates the ALJ's decision.

In *Delamater v. Schweiker*, 721 F.2d 50, 53 (2d Cir.1983), the Court of Appeals rejected the contention that an administrative decision, as opposed to an administrative adjudication, is entitled to *res judicata* effect. The court noted that "[a]n action taken by an administrative agency to grant or deny benefits is not an adjudicated action unless the agency has made its decision using procedures substantially similar to those employed by the courts." *Id.* As examples of the elements of an "adjudication," the court spoke of hearings testimony, subpoenaed evidence, argument, and an "opportunity to test any contention by confrontation." None of these elements was presented in whatever proceedings led to the issuance of the letters upon which the plaintiff seeks to rely.

For the foregoing reasons, the decision of the Secretary is affirmed.

The Clerk is directed to enter judgment dismissing the complaint and to mail a copy of the within to all parties.

SO ORDERED.