Ray MARSHALL, Plaintiff–Appellant,

v.

Shirley S. CHATER, Commissioner of Social Security,* Defendant–Appellee.

No. 95–2043.

United States Court of Appeals, Tenth Circuit.

Jan. 29, 1996.

* Effective March 31, 1995, the functions of the Secretary of Health and Human Services in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103–296. Pursuant to Fed.R.App.P. 43(c), Shirley S. Chater, Commissioner of Social Security, is substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant in this action. Although we have substituted the Commissioner for the Secretary in the caption, in the text we continue to refer to the Secretary because she was the appropriate party at the time of the underlying decision.

James A. Burke, Santa Fe, New Mexico, and Helen Laura Lopez, Albuquerque, New Mexico, on the briefs, for Plaintiff–Appellant.

John J. Kelly, United States Attorney, Joseph B. Liken, Acting Chief Counsel, Tina M. Waddell, Acting Deputy Chief Counsel, and Randall Halford, Assistant Regional Counsel, Office of the General Counsel, Social Security Administration, Dallas, Texas, on the briefs, for Defendant–Appellee.

Before BRISCOE, LOGAN, Circuit Judges, and THOMPSON,** District Judge.

RALPH G. THOMPSON, District Judge.

Claimant Ray Marshall appeals the district court's affirmance of the decision by the Secretary of Health and Human Services reopening claimant's March 3, 1988 eligibility determination for blind benefits, terminating his benefits upon a finding that he engaged in substantial gainful activity in 1986, and authorizing recovery of the amounts overpaid to claimant. Because substantial evidence supports the Secretary's determinations and no legal errors occurred, we affirm.[1]

In November 1974, claimant was awarded social security disability benefits because he met the statutory criteria for blindness. A blind benefits recipient is permitted to work so long as his earnings do not constitute "substantial gainful activity" (SGA). See 20 C.F.R. § 404.1584. The determination whether a recipient's earnings are substantial is made by deducting his "impairment-related work expenses" (IRWEs) from his earnings. 42 U.S.C. § 423(d)(4); 20 C.F.R. § 404.1576. SGA for 1986 was a monthly average over $650, in 1987 it was a monthly average over $680, and in 1988, a monthly average over $700. R. II at 603.

In 1979, claimant began to work for the University of New Mexico as a handicap specialist, earning approximately $560 per month. After the job became full-time in 1984 or 1985, claimant began receiving substantial raises in pay. At the end of 1985, claimant was earning $932.66 per month, at the end of 1986, he was earning $1330.67 per month, at the end of 1987, $1369.25 per month, and at the end of 1988, $1591.17 per month. Id. at 525–26. Claimant did not notify the Social Security Administration (SSA) about these significant changes in his earnings and hours.

In 1987, the SSA received information that claimant had earned $11,081 in 1985. Claimant was requested to fill out a work activity report detailing his earnings and expenses. Although claimant was earning $1330.67 per month in April 1987, he reported his earnings as $932.66 per month. Id. at 489. Claimant did not include any IRWE's in the 1987 report, but did describe certain court-ordered expenses. Id. at 490–91.

In December 1987, claimant was notified that he was scheduled for a continuing disability review on January 7, 1988. On that date, he was interviewed by SSA examiner Mueller, and his responses were recorded on several forms, including a work activity report. According to that form, claimant reported his earnings as "about $560" per month, indicated that he had no IRWE's, and stated that his work was part-time and that it extended only from September to May each year. Id. at 503–05. In fact, claimant was actually earning $1369.25 per month, was on full-time status, and had worked through the summer months each year since 1982. Id. at 524–26. Claimant signed the report on the following day, affirming the truth of its contents. Id. at 505. Based on this information, Mr. Mueller concluded that claimant remained eligible for benefits on March 3, 1988.

In 1990, the SSA discovered that claimant earned over $18,000 in 1989, far exceeding the amounts permitted for that year. Id. at 516. Suspecting that claimant was engaging in SGA, the SSA initiated an investigation into claimant's earnings. This investigation revealed that claimant's earnings had exceeded SGA levels since 1984. Id. at 522–26.

The SSA contacted claimant in June and August 1991, seeking more information on his IRWEs, both current and past. Although claimant was able to produce evidence of current IRWEs, he could only document reader expenses prior to 1991.

In September 1991, the SSA purportedly sent claimant a notice that it was considering whether he had engaged in SGA after July 1984, and inviting him to submit additional

---

** Honorable Ralph G. Thompson, District Judge, United States District Court for the Western District of Oklahoma, sitting by designation.

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

information. Claimant states that he never received any such notice, and there is no evidence of this notice in claimant's file. In October 1991, the SSA notified claimant of its determination that claimant had engaged in SGA starting in July 1984, and that his benefits were being terminated retroactively to September 1984. *Id.* at 546–48. Claimant was also notified that he had been overpaid by $94,686. *Id.* at 549–51. Claimant filed a motion for reconsideration of this initial decision.

On December 20, 1991, the SSA issued a notice regarding its impending reconsidered decision. The notice informed claimant of the SSA's tentative decision, identified the evidence it considered, and gave claimant ten days to submit additional information. *Id.* at 586–88. On February 7, 1992, the SSA issued its reconsidered decision, finding that, even after considering claimant's IRWEs, his earnings constituted SGA after February 1986. *Id.* at 603–05.

At the same time, claimant filed suit in the United States District Court for the District of New Mexico. On December 17, 1991, the district court issued a temporary restraining order directing the SSA to pay benefits retroactively for November and December, and to continue claimant's benefits pursuant to 42 U.S.C. § 423(g). In February 1992, the district court concluded that continued benefits were not available in medical cessation cases, and that claimant's complaint should be dismissed for failure to exhaust his administrative remedies. On appeal, we affirmed the dismissal, holding that claimant was not excused from the exhaustion requirement because the alleged lack of notice in September 1991 did not state a colorable constitutional claim. *See Marshall v. Shalala,* 5 F.3d 453, 455 (10th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1309, 127 L.Ed.2d 660 (1994).

Claimant requested a hearing before an ALJ. After a prehearing conference, the ALJ remanded the case to the SSA for a new reconsideration, noting the absence of a discernible basis for reopening the March 3, 1988 determination and the procedural irregularities which occurred in the case. On remand, the SSA identified "new and material evidence" as the basis for its reopening.

R. II at 756. On September 8, 1992 and October 21, 1992, the SSA again determined that claimant began performing SGA in February 1986. *Id.* at 761–63, 764–67.

An administrative hearing was held in March 1993. In a detailed 128–page decision, the ALJ concluded that claimant had received the September 1991 notice; that even if he did not, he was given adequate notice and an opportunity to respond either through his oral contacts with the SSA in June and August 1991 or through the December 20, 1991 reconsideration letter; that the SSA was entitled to reopen the March 3, 1988 determination based either on new and material evidence or on claimant's fraud or similar fault; that claimant had engaged in SGA since February 1986, and thus was not entitled to benefits after April 1986; that claimant had been overpaid by $82,349; and that the SSA was entitled to recover this amount because claimant was not without fault for the overpayment. The Appeals Council denied review, making the ALJ's decision the final decision of the Secretary.

Claimant sought review in the United States District Court for the District of New Mexico. The case was assigned to a magistrate judge who, after a hearing, recommended that the decision be affirmed. The district court adopted the recommendation, and this appeal followed.

 In social security cases, we review the Secretary's decision only to determine if it is supported by substantial evidence and if correct legal standards were applied. *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir.1994). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). We may neither reweigh the evidence nor substitute our judgment for that of the Secretary. *Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir.1991).

Claimant first argues that the Secretary had no authority to terminate his benefits in the fall of 1991 because he demonstrated his current eligibility for benefits at that time. Claimant's current eligibility, however, had no bearing on whether his prior earnings rendered him ineligible for benefits in 1986. After completing trial work and reentitlement periods, a blind person's entitlement to cash benefits ends "the month in which [he] demonstrate[s] his] ability to engage in [SGA]." § 404.1586(a)(3). Assuming that claimant first engaged in SGA in 1986, his entitlement to benefits ended at that time. Whether he again became eligible for benefits was the subject for a new application, and did not affect the Secretary's right to terminate benefits on claimant's old application. *See Dugan v. Sullivan,* 957 F.2d 1384, 1389 (7th Cir.1992) (noting that a claimant must reapply for benefits after a retroactive termination); *Wonica v. Secretary of Dep't of Health & Human Servs.,* 792 F.Supp. 8, 11–12 (E.D.N.Y.1991) (holding that claimant who ceased engaging in SGA was not entitled to automatic reinstatement of benefits, without filing a new application, because reentitlement period had ended); *cf.* § 404.1592a(a) (providing that a new application need not be filed if a claimant discontinues SGA within the reentitlement period, thus implying that a new application is necessary if SGA ceases after such time).

Claimant argues that the Secretary erred in reopening the March 3, 1988 eligibility determination for several reasons. First, he argues that the determination could not be reopened based on new and material evidence because the evidence was not "new," and because the reopening occurred more than four years after the prior determination. Second, he argues that the determination could not be reopened for "fraud or similar fault" because he was not warned that this would be at issue, and, in any event, because the evidence was insufficient to support such a finding. We hold that the 1988 determination was properly reopened on either ground.

■ Evidence is "new" if it was not before the decisionmaker when the previous determination was made. *Cf. Dugan,* 957 F.2d at 1390 (holding that evidence was not "new" because SSA already had such evidence when it made the initial determination). Here, claimant's true earnings from the second half of 1984 through 1988 were not before SSA examiner Mueller when he made his decision that claimant remained eligible for benefits in 1988. *See* R. II at 522–26. We note that claimant's file, with information about his 1985 earnings, was not available to the district office when Mr. Mueller reviewed claimant's status. Even if we were to impute constructive knowledge of the missing file's contents to Mr. Mueller, however, he still did not have accurate evidence of claimant's earnings after 1985. The fact that he could have obtained such information had he contacted claimant's employer does not mean that the information was not new.

■ Further, the reopening occurred within the four-year limit imposed by § 404.988(b). Although SSA documents did not use the word "reopen" until September 8, 1992, the March 3, 1988 determination was reopened de facto in October 1991, when the SSA concluded that claimant had, in fact, engaged in SGA since 1984. *See Taylor ex rel. Peck v. Heckler,* 738 F.2d 1112, 1115 (10th Cir.1984) (finding that a prior determination was de facto reopened when evidence relating to the prior claim was received and considered, and a formal decision on the merits was rendered).

■ We do not address claimant's argument that he was deprived of due process by the ALJ's lack of notice that he would consider claimant's "fraud or similar fault" as a basis for reopening the 1988 determination. Claimant did not raise this issue either to the Appeals Council, *see* R. II at 919–924, or to the magistrate judge, *see* R. I, docs. 1, 15, 16, 30. The first time that claimant mentioned such lack of notice was in his objections to the magistrate judge's decision, *id.,* doc. 46 at 3–4, and even then, he did not claim that the procedure denied him due process, *see id.* Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived. *See, e.g., Paterson–Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990–91 (1st Cir.1988) (holding that "an unsuccessful party is not

entitled as of right to de novo review ... of an argument never seasonably raised before the magistrate"); *Borden v. Secretary of Health & Human Servs.,* 836 F.2d 4, 6 (1st Cir.1987) (holding that issues raised for the first time in objections to magistrate's recommendation were waived); *see also Greenhow v. Secretary of Health & Human Servs.,* 863 F.2d 633, 638–39 (9th Cir.1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by United States v. Hardesty,* 977 F.2d 1347 (9th Cir.1992), *cert. denied,* 507 U.S. 978, 113 S.Ct. 1429, 122 L.Ed.2d 797 (1993).

■ The ALJ's determination that the 1988 determination could be reopened based on claimant's "fraud or similar fault" is supported by substantial evidence. The record is replete with evidence that claimant fraudulently, or at least knowingly, made incorrect statements regarding his income and hours and/or withheld such material information. *See, e.g., Heins v. Shalala,* 22 F.3d 157, 159, 162 (7th Cir.1994) (holding reopening justified on ground of "similar fault" when claimant failed to report remarriage and signed application which stated "none other" to question regarding other marriages); *Fowler v. Bowen,* 876 F.2d 1451, 1455 (10th Cir.1989) (holding that substantial evidence supported ALJ's finding that claimant's incorrect statement regarding employment status and failure to reveal substantial earnings constituted "fraud or similar fault").

■ We also find no merit in claimant's argument that the ALJ was prohibited from remanding the case to the SSA for clarification of its basis for reopening the 1988 determination. The remand in this case was a prehearing case review authorized by 20 C.F.R. § 404.941(b)(4), which permits remand if there is some indication in the file that the prior determination may be revised. The section quoted by claimant applies only when the remand is made in lieu of an oral hearing before an ALJ. *See* 20 C.F.R. § 404.948(c). Even if section 404.948(c) applied, the remand would have been appropri-

ate because, based on claimant's res judicata defense, there was "reason to believe that the revised determination would be fully favorable to [claimant]." *Id.* Finally, claimant did not object to the remand on this ground. *See* R. II at 742.

■ Having concluded that the March 3, 1988 determination was properly reopened, we turn to claimant's argument that the SSA's failure to provide him a pretermination notice invalidated the ensuing proceedings. Claimant argues that this lack of notice violated both his constitutional right to due process and the Secretary's own regulations and policies.

■ Due process requires that a disability benefits recipient be given notice and an opportunity to be heard before his entitlement to benefits may be terminated. *Mathews v. Eldridge,* 424 U.S. 319, 332–333, 348–49, 96 S.Ct. 893, 901–902, 909–10, 47 L.Ed.2d 18 (1976). The Secretary's regulations also require that when information is discovered which conflicts with information reported by a recipient, the recipient must be given advance notice and an opportunity to respond before his benefits may be terminated. *See* 20 C.F.R. §§ 404.1586(f), 404.1595. The notice must summarize the SSA's information and explain why the recipient is no longer eligible for benefits. § 404.1595(b). The recipient then has ten days to submit additional information to the agency. § 404.1595(c). These procedures have been held to comport with due process. *Eldridge,* 424 U.S. at 349, 96 S.Ct. at 909–10.

It is unclear from the record whether the September 1991 predetermination letter was ever sent in this case. There is no dispute, however, that claimant received the December 20, 1991 letter which contained the information required by the regulations. Claimant was also given ten days from that notice to submit any information that he wished the SSA to consider. Finally, claimant's benefits were continued under district court order until February 1992. We hold, therefore, that the December 20, 1991 notice and subsequent proceedings cured any alleged error which may have occurred earlier. *See Marshall,* 5 F.3d at 455. The December notice

served, in effect, as the advance notice required by the regulations and by due process. For this reason, we need not examine the ALJ's finding that claimant actually received the September notice.

■ Claimant also argues that the issue of waiver was not before the ALJ and should not have been decided. We disagree. In his request for a hearing, claimant identified his eligibility for waiver as one of the issues to be considered. R. II at 606. The ALJ's hearing notice also identified waiver as an issue to be decided. *Id.* at 796–97. The ALJ was entitled, therefore, to find that claimant was not entitled to waiver of recovery of his overpayment.

■ As a final matter, claimant argues that he was entitled to continued benefits while his appeal was pending before the ALJ. Federal law gives a recipient the right to receive benefits during his administrative appeal where the SSA has determined that the recipient is no longer entitled to benefits because "the physical or mental impairment on the basis of which such benefits are payable is found to have ceased, not to have existed, or to no longer be disabling." 42 U.S.C. § 423(g)(1)(B). The SSA has interpreted this provision to authorize continued benefits only in medical cessation cases, denying such benefits when a recipient's ineligibility is based on excessive earnings. *See* 20 C.F.R. §§ 404.1597(b), 404.1597a.

■ "When reviewing an agency's interpretation of the statute it administers, we first determine whether the statute is unambiguous." *Utah v. Babbitt,* 53 F.3d 1145, 1148 (10th Cir.1995); *see also Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). If, after reviewing the language of the statute and its legislative history, the intent of Congress is clear, we must give effect to that intent. *Babbitt,* 53 F.3d at 1148. "If, however, the statute is ambiguous or silent on the issue in question, we must determine whether the agency's determination is based on a permissible construction of the statute. If so, we will defer to the agency's interpreta-

tion." *Id.* (citations omitted); *see also Chevron,* 467 U.S. at 842–44, 104 S.Ct. at 2781–83.

Here, it is not clear from the statute whether Congress intended to authorize continuing benefits to a recipient who has been determined ineligible based on excessive earnings. The legislative history is ambiguous on this point as well. *Compare* H.R.Rep. No. 618, 98th Cong., 2d Sess. 4, 16 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3038, 3041, 3053 (noting that proposed bill provided for continuation of benefits during appeal "in all CDI cases," but later defining CDI cases as involving the termination of benefits "due to a medical review") *with id.* at 17, 1994 U.S.C.C.A.N. at 3054 (describing provision allowing continued benefits as available to those "beneficiaries whose benefits had been ceased because of a medical review") and H.R.Conf.Rep. No. 1039, 98th Cong. 2d Sess. 33 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3038, 3091 (describing continued benefits provision as limited to "individuals notified of a medical termination").

The language of the statute appears to support the agency's interpretation. Section 423(f) sets forth the standard to be met before the SSA can find that "the physical or mental impairment on the basis of which [a recipient's] benefits are provided has ceased, does not exist, or is not disabling...." The evidence required for such a determination is medical in nature. *Id.* Terminations for nonmedical reasons are addressed in the next sentence, permitting a finding that a recipient is not entitled to benefits if "the prior determination was fraudulently obtained or if the individual is engaged in substantial gainful activity, cannot be located, or fails, without good cause, to cooperate in a review ... or to follow prescribed treatment...." *Id.* Because the statute appears to distinguish between medical and nonmedical terminations, and because the continued benefits provision uses the language associated with medical terminations, *see* § 423(g)(1)(B), the agency's interpretation is permissible and will be upheld.

Plaintiff-appellant's motion to strike and for sanctions is DENIED, and the judgment

of the United States District Court for the District of New Mexico is AFFIRMED.