**PUBLISH**
**UNITED STATES COURT OF APPEALS**
Filed 11/13/96
**TENTH CIRCUIT**

SIERRA CLUB; WASATCH CLEAN AIR
COALITION,

     Petitioners,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,

     Respondent,

----------------------

STATE OF UTAH,

     Intervenor.

No. 95-9541

**Appeal from an Order of
The United States Environmental Protection Agency**

Munir R. Meghjee (Robert B. Wiygul, Sierra Club Legal Defense Fund, Denver,
Colorado, and Robert W. Adler, Salt Lake City, Utah, with him on the briefs),
Sierra Club Legal Defense Fund, Denver, Colorado, for Petitioners.

David A. Carson, (Lois J. Schiffer, Assistant Attorney General, Environment &
Natural Resources Division; Kevin W. McLean and Kendra H. Sagoff, Office of
General Counsel, United States Environmental Protection Agency, Washington,
D.C.; Jonah M. Staller, Office of Regional Counsel, United States Environmental
Protection Agency, Denver, Colorado, with him on the brief), United States
Department of Justice, Environment & Natural Resources Division, Denver,
Colorado, for Respondent.

Fred G. Nelson (Jan Graham, Attorney General; Denise Chancellor, Assistant Attorney General with him on the brief), Assistant Attorney General, Salt Lake City, Utah, for Intervenor.

---

Before **BRORBY, GODBOLD**[*] and **McWILLIAMS**, Circuit Judges.

---

**BRORBY**, Circuit Judge.

---

The Sierra Club and Wasatch Clean Air Coalition ("Petitioners") seek judicial review of a final agency action in accordance with the Clean Air Act (the "Act"), 42 U.S.C. § 7607(b)(1) (1994).  Specifically, Petitioners challenge the Environmental Protection Agency's decision to exempt Salt Lake and Davis Counties, Utah (the "Counties") from selected Clean Air Act "nonattainment area" requirements without first redesignating the Counties as an "attainment area" pursuant to 42 U.S.C. § 7407(d)(3)(E)(i)-(v) (1994).  Petitioners contend  the Environmental Protection Agency's decision is unreasonable and contrary to the plain meaning of the Clean Air Act, and therefore must be set aside under both the first and second steps of *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

---

[*]  The Honorable John C. Godbold, Senior Circuit Judge for the Eleventh Circuit, sitting by designation.

Having thoroughly reviewed the administrative record and considered the parties' arguments, we uphold the Environmental Protection Agency's Clean Air Act interpretation and deny the Petitioners' request to set aside the Environmental Protection Agency's July 18, 1995 final decision entitled "Determination of Attainment of Ozone Standard for Salt Lake and Davis Counties, Utah, and Determination Regarding Applicability of Certain Reasonable Further Progress and Attainment Demonstration Requirements."

## **NATURE OF THE CASE**

The Clean Air Act, 42 U.S.C. §§ 7401 - 7671q (1994) establishes a program, jointly administered by the federal government and the states, to "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and productive capacity of its population." 42 U.S.C. § 7401(b)(1). Toward that end, the Act requires the Environmental Protection Agency to establish primary and secondary National Ambient Air Quality Standards for certain pollutants such as ozone.[1] Pursuant to the Act, areas failing to meet the National Ambient Air Quality Standard for ozone are designated as

---

[1] The National Ambient Air Quality Standard for ozone is 0.12 ppm not to be exceeded more than 3 times in a three year period at any one monitoring station. 40 C.F.R. § 50.9 & App. H (1995).

"nonattainment" areas, which must develop a State Implementation Plan with sufficient control measures to attain and maintain the ozone standard. 42 U.S.C. § 7410.

In 1977, Salt Lake and Davis Counties, Utah, failed to meet the National Ambient Air Quality Standards for ozone. Accordingly, the Counties were designated as a nonattainment area and submitted a State Implementation Plan to the Environmental Protection Agency. Amendments to the Clean Air Act in 1990, which further classified ozone nonattainment areas according to the severity of air pollution (*e.g.,* marginal, moderate, serious, severe, and extreme), 42 U.S.C. § 7511, resulted in the Counties being reclassified as a "moderate nonattainment area." 40 C.F.R. § 81.345 (1995). Moderate nonattainment areas are subject to the requirement of 42 U.S.C. §§ 7511a(b)(1)(A)(i) and 7502(c)(9). Section 7511a(b)(1)(A)(i),[2] referred to as the "fifteen percent reasonable further progress

---

[2] Section 7511a(b)(1)(A)(i) states in relevant part:

**§ 7511a. Plan submissions and requirements**
(b) Moderate Areas
    (1) Plan provisions for reasonable further progress
        (A) General rule
            (i) By no later than 3 years after
        November 15, 1990, the State shall submit a
        revision to the applicable implementation
        plan to provide for volatile organic
        compound emission reductions, within 6

-4-

plan" and the "attainment demonstration" provision, requires moderate nonattainment areas to continue "reasonable further progress" toward attaining National Ambient Air Quality Standards. This goal is achieved by requiring the area to submit a plan providing for a fifteen percent reduction in volatile organic compounds. Additionally, § 7511a(b)(1)(A)(i) requires the submitted plan provide for such specific annual emission reductions sufficient to demonstrate the area will attain the National Ambient Air Quality Standards by the statutory deadline. Section 7502(c)(9) provides further future compliance assurance by requiring moderate and other nonattainment areas to submit a plan with specific "contingency measures" to be implemented if the area fails to attain, or fails to make reasonable further progress toward attaining, the National Ambient Air Quality standards by the statutory deadline.

By the end of summer 1992 the Counties had collected the requisite three

---

years after November 15, 1990, of at least 15 percent from the baseline emissions, accounting for any growth in emissions after 1990. Such plan shall provide for such specific annual reductions in emissions of volatile organic compounds and oxides of nitrogen as necessary to attain the national primary ambient air quality standard for ozone by the attainment date ....

years of ambient monitoring data to demonstrate attainment of the ozone standard. In fact, the data demonstrates the Counties have attained the ozone standard since 1991.[3]  Accordingly, in 1993, the State of Utah submitted an application to the Environmental Protection Agency requesting that Salt Lake and Davis Counties be redesignated as an "attainment" area pursuant to 42 U.S.C. § 7407(d)(3).  The Environmental Protection Agency and the State of Utah continue to work toward the completion of the redesignation process.

Pending completion of the redesignation process, and based on air quality data collected from 1992 to 1994, the Environmental Protection Agency issued a direct final rule and a final rule,[4] which is the basis of Petitioners' challenge.  60

---

[3]  This improvement largely is attributed to the implementation of state air quality plans in the 1980's that reduced motor vehicle emissions and applied reasonably available control technology to the point sources of ozone precursor pollutants.  Ozone is formed through the interaction of volatile organic compounds, nitrogen oxides, carbon monoxide and sunlight.  The sources of these ozone precursor pollutants include facilities that handle petroleum products, combustion sources, petroleum fuel powered engines and biogenic sources.

[4]  A direct final rule becomes effective without further administrative action, unless adverse comments are received within the time limit specified in the proposed rule.  If adverse comments are received, the Environmental Protection Agency withdraws its direct final rule and issues a final rule that addresses those comments.  In this case, the Environmental Protection Agency received comments from the Sierra Club and one other commenter.  The Environmental Protection Agency therefore withdrew its direct final rule and, after considering the comments, issued its final rule.

Fed. Reg. 30,217 (1995) (proposed rule); 60 Fed. Reg. 30,189 (direct final rule).

In its final rule, without redesignating the area as an attainment area, the Environmental Protection Agency determined that because the Counties had attained the National Ambient Air Quality Standards the "fifteen percent reasonable further progress plan" and the "attainment demonstration" requirements of § 7511a(b)(1)(A)(i) and the "contingency measures" requirement of § 7502(c)(9) were inapplicable. 60 Fed. Reg. at 36, 723. In addition, the State of Utah would not be subject to Clean Air Act sanctions for failure to submit plan revisions addressing these requirements.[5] Petitioners challenge this final rule, asserting that the fifteen percent reasonable further progress plan, attainment demonstration, and contingency measures requirements are mandatory absent formal redesignation to attainment area status.

## ANALYSIS

[5] Any state failing to satisfy Clean Air Act requirements is subject to federal sanctions in the form of stricter requirements for siting new or modified pollution sources, or a prohibition on the approval of federal highway funds. 42 U.S.C. § 7509. The Environmental Protection Agency is authorized to impose sanctions eighteen months after finding a state has failed to submit required State Implementation Plan elements. This eighteen-month "sanctions clock" is turned off if and when the deficiency is corrected, or when an area is redesignated to attainment. *See* 42 U.S.C. §§ 7509(a), 7505a(c).

The issue for our determination is whether the Environmental Protection Agency correctly determined that 42 U.S.C. §§ 7502(c)(9) and 7511a(b)(1)(A)(i), do not apply to areas which are attaining the ozone standard, but which have not yet been redesignated as attainment areas. This Court will set aside the Environmental Protection Agency's determination only if it is arbitrary, capricious, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A) (1994). Where, as here, the issue turns on the Environmental Protection Agency's interpretation of a statute it administers, our analysis is dictated by *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Applying *Chevron*, we first determine whether the statute is unambiguous -- *i.e.*, whether Congress directly has spoken to the precise question at issue. Chevron, 467 U.S. at 842-43; *Marshall v. Chater*, 75 F.3d 1421, 1428 (10th Cir. 1996). If congressional intent is clear, we must give effect to that intent. If, however, the statute is ambiguous or silent on the issue in question, we must proceed to the second step of the *Chevron* analysis and determine whether the agency's determination is based on a permissible construction of the statute. If the agency's construction is reasonable, we will defer to the agency's interpretation. *Chevron*, 467 U.S. at 842-44; *Marshall*, 75 F.3d at 1428.

A.   Plain Language

Petitioners first contend the Environmental Protection Agency's final rule exempting the Counties from the fifteen percent volatile organic compound reduction, attainment demonstration and contingency measures requirements is contrary to the plain meaning of the Clean Air Act and must be set aside under the first step of the *Chevron* analysis. We disagree.

Petitioners' plain language argument is circuitous and difficult to summarize. However, Petitioners appear to build from the premise that each of the provisions at issue must be read individually and literally to give full effect to any mandatory language included in those provisions. It is true a literal reading of the first sentence of 42 U.S.C. § 7511a(b)(1)(A)(i), in isolation, does mandate that a state with a moderate nonattainment area "shall submit a revision to the applicable implementation plan to provide for volatile organic compound emission reductions ... of at least 15 percent from baseline emissions." That provision goes on, however, to state that "*[s]uch plan* shall provide for such specific annual reductions in emissions of volatile organic compounds and oxides of nitrogen *as necessary to attain the national primary ambient air quality standard for ozone.*" *Id.* (emphasis added). Moreover, the provision is captioned "Plan provisions for reasonable further progress." The phrase "reasonable further progress" is defined as "such annual incremental reductions in emissions of the

relevant air pollutant as are required by this part or may reasonably be required by the Administrator *for the purpose of ensuring attainment of the applicable national ambient air quality standard.*"[6] 42 U.S.C. § 7501(1) (emphasis added). The plain language of 42 U.S.C. § 7502(c)(9) similarly refers to contingency measures to be taken if an area "fails to make reasonable further progress, or to attain the national primary ambient air quality standard." When read as a whole to properly understand the statutory context, *see Urban v. King*, 43 F.3d 523, 526 (10th Cir. 1994), these two provisions fail to clearly require areas that have attained the ozone standard but have not yet been redesignated to attainment status to make further emission reductions. The language instead suggests Congress intended the fifteen percent volatile organic compound reduction requirement and the contingency measures requirement to apply only when necessary to attain the relevant ozone standard.

At best, Petitioners' complex plain language argument establishes that some ambiguity may exist as to Congress' intent . We therefore move on to consider whether the Environmental Protection Agency's construction of the two provisions at issue is a permissible one.

_____

[6] This definition applies for "the purposes of ... part" D of Title I of the Clean Air Act, which includes 42 U.S.C. § 7511a(b)(1)(A)(i). *Id.*

B.     The Environmental Protection Agency's Interpretation

Petitioners contend that even if the Environmental Protection Agency's statutory interpretation does not violate the plain statutory language, the agency's interpretation is unreasonable as it creates internal inconsistencies in the Environmental Protection Agency's application of the Act and circumvents the Clean Air Act 's preventive approach.  The Environmental Protection Agency's rationale for its determination is set forth fully in the final rule being challenged, 60 Fed. Reg. 36,723 (1995), and in the May 10, 1995 memorandum from John Seitz, Director, Office of Air Quality Planning and Standards to the various regional air quality directors.  In essence,  the Environmental Protection Agency reasons that the purpose of the fifrteen percent volatile organic compound reduction requirement, the attainment demonstration requirement and the contingency measures requirement is to ensure reasonable further progress toward and timely attainment of the National Ambient Air Quality Standard for ozone.  If an area can demonstrate via three years of monitoring data that it has in fact attained the ozone standard, the purpose of those requirements has been fulfilled and plan provisions outlining additional measures to achieve attainment would have little meaning.  Moreover, air quality controls designed to surpass the applicable ozone standard  would be both costly and unnecessary.

1.     Programmatic Consistency.

Petitioners argue it is inconsistent for the Environmental Protection Agency to apply some ozone nonattainment area requirements (*e.g.*, the application of reasonable available control technology to stationary sources and the implementation of a motor vehicle inspection and maintenance plan), but not others (*e.g.*, the fifteen percent volatile organic compound reduction and contingency measures). Instead, they would have the Environmental Protection Agency rigidly apply all ozone nonattainment area requirements unless and until an area is formally redesignated to attainment status. Petitioners contend there is no basis for distinguishing the provisions since each requirement "has the same substantive effect -- to reduce emissions of pollutants so that the [National Ambient Air Quality Standard] is attained both now and in the future."

The Environmental Protection Agency consistently has rejected this all or nothing approach. Shortly after the Clean Air Act Amendments of 1990, the Environmental Protection Agency published a General Preamble for the Implementation of Title I of the Clean Air Act Amendments of 1990. 57 Fed. Reg. 13,498 (1992). In that preamble, the Environmental Protection Agency determined certain general nonattainment plan requirements do not apply in evaluating a request for redesignation to attainment under circumstances where

(1) an area has in fact monitored attainment of the standard, and (2) those requirements are expressly linked by statutory language with the notion of reasonable further progress. *See* 57 Fed. Reg. at 13,564. The Environmental Protection Agency reasoned that when an area requests redesignation to attainment status,

> at a minimum, the air quality data for the area must show that the area has already attained [the National Ambient Air Quality Standards]. Showing that the State will make [reasonable further progress] towards attainment will, therefore, have no meaning at that point.

57 Fed. Reg. at 13,564. In other words, once the standards are obtained, requirements related to the demonstration of reasonable further progress toward attainment serve no purpose. Any additional or future air quality protection is left to the operation of other Clean Air Act provisions.

The determination to exempt Salt Lake and Davis Counties from analogous ozone-specific nonattainment plan requirements is a logical extension of the Environmental Protection Agency's original, general interpretation of the 1990 Clean Air Act Amendments. We afford deference to the Agency's interpretation under these circumstances. *New Mexico Envtl. Improvement Div. v. Thomas*, 789 F.2d 825, 831-32 (10th Cir. 1986) (the court will defer to an agency's statutory interpretation when such an interpretation is contemporaneous with the

legislation's enactment and has been consistently adhered to by the agency over time).

Consistent with its interpretation of the general reasonable further progress provisions, the Environmental Protection Agency exempted the Counties from the §§ 7511a(b)(1)(A)(i) and 7502(c)(9) requirements because the statutory language imposing those requirements is directly linked to the notion of reasonable further progress toward attainment. Here again, the stated purpose of "reasonable further progress" is to ensure attainment by the applicable attainment date. If a moderate ozone nonattainment area has in fact already attained the ozone standard, it would make little sense to require a state to demonstrate the area will make reasonable progress toward attainment.

Not all ozone nonattainment area provisions are semantically connected to reasonable further progress requirements. For obvious reasons, the application of those provisions (*i.e.*, the application of reasonable available control technology to stationary sources and the implementation of a motor vehicle inspection and maintenance plan, 42 U.S.C. §§ 7511a(b)(2), 7511a(b)(4)) continues to fulfill important Clean Air Act objectives whether or not an area has attained the ozone standard. Accordingly, the Environmental Protection Agency affords no relief

from those requirements based on actual attainment.

We do not find the Environmental Protection Agency's interpretation to create programmatic inconsistency. Nor do we find anything in the structure or language of the nonattainment area provisions at issue that contradicts the Environmental Protection Agency's longstanding interpretation. In sum, the Petitioners' uncompromising reading of the ozone nonattainment area requirements lacks the textual support necessary to overcome the Environmental Protection Agency's pragmatic construction.

2.    The Redesignation Process.

Petitioners assert that the redesignation process outlined at 42 U.S.C. § 7407d(3)(E) represents the exclusive means by which an area may be redesignated from nonattainment to attainment status. Thus, Petitioners argue, the Environmental Protection Agency is not authorized to make any factual determination of attainment outside the formal redesignation process.

The Environmental Protection Agency may redesignate an area from nonattainment to attainment in accordance with the provisions of 42 U.S.C. § 7407(d)(3)(E). Notably, this process involves more than a simple determination

the area has attained the relevant National Ambient Air Quality Standards.  In addition to that factual determination, the Environmental Protection Agency must (1) fully approve the State Implementation Plan; (2) determine that the improvement in air quality is due to permanent and enforceable reductions in emissions resulting from implementation of the State Implementation Plan and other required reductions; (3) fully approve a maintenance plan under 42 U.S.C. § 7505a; and (4) determine that the State has met all applicable requirements under 42 U.S.C. § 7410 with respect to State Implementation Plans generally, and under part D with respect to State Implementation Plan provisions for nonattainment areas.  42 U.S.C. § 7407(d)(3)(E).  Before an area may be redesignated to attainment, the State also must adopt and submit maintenance plans that (1) provide for maintenance of the National Ambient Air Quality Standards for at least ten years after redesignation, and (2) include additional measures as necessary to ensure the area remains in attainment.  42 U.S.C. § 7505a.  The State further is required to revise its maintenance plan eight years after redesignation to cover a second ten-year period after the first ten-year maintenance plan expires.[7]  42 U.S.C. § 7505a(b).

---

    [7]  Accordingly, the Environmental Protection Agency intends that the maintenance plans will ensure that population growth and other changes in a redesignated area over a twenty-year period do not lead to a violation of the relevant National Ambient Air Quality Standards.

The Environmental Protection Agency has made it abundantly clear its determination to exempt the Counties from certain reasonable further progress and attainment demonstration requirements is not a de facto redesignation to attainment status. 60 Fed. Reg. at 36,723. As discussed above, the redesignation process involves more than a factual determination that monitoring data establishes attainment with the applicable standard. All redesignation criteria at 42 U.S.C. § 7407(d)(3)(E) remain in full force and effect and must be satisfied before the Environmental Protection Agency will approve the Counties' pending redesignation request. Moreover, if the Counties violate the ozone National Ambient Air Quality Standards prior to their redesignation to attainment status, the exemption from certain attainment demonstration and reasonable further progress requirements will no longer apply, and the Counties will have to submit plan revisions pursuant to 42 U.S.C. §§ 7502(c)(9) and 7511a(b)(1)(A)(i). In addition, if the Counties violate the ozone standards prior to redesignation, they would be "bumped-up" from moderate nonattainment status to serious nonattainment status pursuant to 42 U.S.C. § 7511(b)(2), and would then have to satisfy the more stringent requirements imposed on serious ozone nonattainment areas. *See* 42 U.S.C. § 7511a(c)(2)(b). Under these circumstances, the Petitioners' argument that the Environmental Protection Agency is somehow circumventing the formal redesignation process is unavailing. The Environmental

-17-

Protection Agency has convincingly demonstrated it is not circumventing the redesignation process and the State of Utah is not without incentive to complete this process.

3.    Statutory Purpose.

Finally, Petitioners argue the Environmental Protection Agency's Clean Air Act interpretation is unreasonable as it fails to satisfy the Clean Air Act's purpose to protect public health.  In this context, the Petitioners emphasize their concern that the Environmental Protection Agency is failing to ensure the Counties will continue to attain the applicable ozone standards in the future by creating a "limbo" between attainment and nonattainment status "that deprives citizens of the contingent protections against future declines in air quality."

We remain unpersuaded by this argument.  As discussed above, the provisions at issue are directly linked to reasonable further progress toward attainment of the ozone National Ambient Air Quality Standards, not beyond.  To date, the Utah State Implementation Plan's existing air quality control measures and other applicable federal requirements (*e.g.*, the motor vehicle control program) have resulted in enforceable emission reductions within the Counties -- reductions which in turn have resulted in attainment of the ozone standard for

over five years. Should those existing control measures and requirements prove inadequate to prevent future violations, the Environmental Protection Agency will require the Counties to implement additional control measures within a reasonable time. Recall that the Environmental Protection Agency's determination to exempt the Counties from limited ozone nonattainment area requirements is really no more than a suspension of those requirements for so long as the area continues to attain the standard or until the area is formally redesignated to attainment status.

The Environmental Protection Agency summarized the flaw in Petitioners' argument best:

> The [Counties have] attained the primary ozone standard, a standard designed to protect public health with an adequate margin of safety (*see* section 109(b)(1)). [The Environmental Protection Agency 's] action does not relax any of the requirements that have led to the attainment of the standard. Rather, its action has the effect of suspending requirements, for additional pollution reductions, above and beyond those that have resulted in the attainment of the health-based standard.

60 Fed. Reg. at 36,727. Under these circumstances, Petitioners' presumption that the Counties will violate ozone standards in the future and that "Utahns will be required to breathe for a protracted period unhealthy air while Utah develops controls that should have been in place earlier" seems disingenuous.

## CONCLUSION

-19-

We conclude the Environmental Protection Agency has reasonably interpreted and applied the Clean Air Act to preserve the Act's objective of achieving the health-based ozone standard while at the same time avoiding the imposition of costly emission control requirements that are unnecessary to meet that objective. Accordingly, we uphold the Environmental Protection Agency's "Determination of Attainment of Ozone Standard for Salt Lake and Davis Counties, Utah, and Determination Regarding Applicability of Certain Reasonable Further Progress and Attainment Demonstration Requirements" and deny the Petition for Review.