**Avery D. RUSHING, a minor by his guardian and next friend, Ruth RUSHING, Plaintiff,**

**v.**

Larry G. MASSANARI,[1] Commissioner
of Social Security, Defendant.

No. CIV. A. 99–2484–GTV.

United States District Court,
D. Kansas.

Aug. 23, 2001.

Luis Mata, Evans & Mullinix, P.A., Shawnee, KS, for Plaintiff.

Janice M. Karlin, Office of U.S. Atty., Kansas City, KS, for Defendant.

## MEMORANDUM AND ORDER

VanBEBBER, Senior District Judge.

Ruth Rushing brings this action on behalf of her grandson, plaintiff Avery D. Rushing, a minor, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) and D. Kan. Rule 83.7, seeking judicial review of the decision of the Commissioner of Social Security ("Commissioner") to deny plaintiff's application for childhood supplemental security income benefits under Title XVI of the Social Security Act ("the Act"). For the reasons set forth below, the court affirms the Commissioner's decision.

### I. Procedural Background

On February 27, 1997, Ruth Rushing filed plaintiff's application for supplemental security income benefits claiming disability since August 31, 1996. The application was denied both initially and upon reconsideration. An administrative law

---

**1.** Larry G. Massanari became the Acting Commissioner of Social Security on March 29, 2001; therefore, he is substituted for Commissioner Kenneth S. Apfel as the defendant to this lawsuit. See 42 U.S.C. § 405(g); Fed.R.Civ.P. 25(d).

judge ("ALJ") held a hearing on June 11, 1998, at which plaintiff and his counsel were present. On August 25, 1998, the ALJ rendered a decision in which he determined that plaintiff was not under a "disability" as defined by the Act. After the ALJ's unfavorable decision, plaintiff requested review by the Appeals Council. The Appeals Council denied plaintiff's request for review on August 19, 1999, rendering the ALJ's decision the final decision of the Commissioner.

## II.  Standard of Review

The Commissioner's findings are binding on this court if supported by substantial evidence. See 42 U.S.C. § 405(g); *Dixon v. Heckler*, 811 F.2d 506, 508 (10th Cir. 1987). The court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record and whether the Commissioner properly applied relevant legal standards. See *Marshall v. Chater*, 75 F.3d 1421, 1425 (10th Cir.1996) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir.1994)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Castellano*, 26 F.3d at 1028 (citations and internal quotation marks omitted). The court may not reweigh the evidence or substitute its judgment for that of the ALJ or the Commissioner. See *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1500 (10th Cir.1992).

## III.  Factual Background

Plaintiff was born on March 3, 1990. He was seven years old and in the second grade at the time his grandmother applied for SSI benefits. According to a developmental assessment guide that plaintiff's classroom teacher completed in March of 1997, plaintiff almost never tolerated kidding, almost never got along with his peers, almost never worked cooperatively with others, almost never showed consideration of others, almost never appropriately sought advice or help, almost never concentrated and stayed on task, and almost never remained attentive in class. Plaintiff's classroom teacher indicated that plaintiff was argumentative and disruptive in class, and that he had problems fighting with other children.

In April of 1997, Dr. Jayashree S. Coca, a staff psychiatrist at the Wyandot Mental Health Center, diagnosed plaintiff with attention deficit hyperactivity disorder ("ADHD") and post-traumatic stress disorder. Dr. Coca noted that "[plaintiff] has difficulty following directions and constantly disrupts other children in the classroom." She prescribed five milligrams of Ritalin to be taken each morning and at noon. Case managers also began working with plaintiff on a regular basis.

Plaintiff began taking the medication prescribed by Dr. Coca immediately. At times, plaintiff showed such improvement on the medication that one of his case managers would reward him with a trip to McDonald's. At other times, plaintiff continued to be disruptive or violent at school. After beginning the medication, plaintiff continued to show physical aggressiveness toward his peers at times, kicked a trash can at school, attempted to choke another student, and took a razor blade to school.

The inconsistent results may be explained by the apparent inconsistency with which plaintiff took his medicine. The record is replete with references to problems concerning the proper administration of medication to plaintiff. Much of the record consists of reports by plaintiff's case managers. The reports indicate that

plaintiff's teachers repeatedly complained that plaintiff's grandmother was not consistently giving plaintiff his morning medication. They also reflect several complaints by plaintiff's teachers that plaintiff was taking his medication too late (so it was not effective until after he had already been in the classroom for a while) and that the medication was "wearing off" too early. One of plaintiff's case managers determined that the "transition period" between doses of medicine was when plaintiff behaved the worst. The reports also indicate that sometimes plaintiff would spit out his medication or leave it by the water fountain at school.

The record also contains several references to instances where plaintiff or his grandmother would report that plaintiff was regularly taking his medication. At the evidentiary hearing, plaintiff's grandmother testified that she gave him his medication every morning before he went to school, and that the school gave him his medication every afternoon.

On May 20, 1997, plaintiff's claim was reviewed at the request of the Disability Determination Services. The reviewer, G. Stern, Ph.D., concluded that plaintiff's impairments were severe, but that none of his functioning was limited to a "marked" degree.[2] On reconsideration, a second reviewer, whose name is illegible, concluded that only plaintiff's concentration, persistence, or pace was limited to a "marked" degree.

## IV. Discussion

Plaintiff challenges the decision of the Commissioner by alleging that the ALJ failed to evaluate all of the evidence and provide any rationale for his conclusions. Specifically, plaintiff argues that the ALJ erred in failing to find that plaintiff is markedly impaired in two areas of functioning, or extremely impaired in one area of functioning, either of which would render him disabled.

Under the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, a child under the age of eighteen who does not engage in substantial gainful activity is considered disabled if he "has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i), (ii). The regulations implementing this law provide that the ALJ first must determine whether the child is engaging in substantial gainful activity. See 20 C.F.R. § 416.924(b). If the child is not, then the ALJ must determine whether the child's impairment is severe. See id. § 416.924(c). If the child's impairment is severe, then the ALJ must determine whether the impairment meets or medically equals the criteria for an impairment listed in the disability regulations or functionally equals a listed impairment. See id. § 416.924(d). A child whose impairment meets, medically equals, or functionally equals a listed impairment is considered disabled.

"Functional equivalence" can be measured in several ways. The method relevant to this case involves the evaluation of several broad areas of functioning—cognitive/communication; motor; social; per-

---

**2.** A "marked" limitation, in this case, is one which interferes seriously with the child's functioning.

sonal development; and concentration, persistence, or pace. If the ALJ finds that the child has an "extreme" limitation of functioning in one area or a "marked" limitation of functioning in two areas, then the child's impairment is functionally equivalent to a listed impairment, and the child is considered disabled. See 20 C.F.R. § 416.926a(d)

■ In the instant case, the ALJ found that plaintiff was not engaged in substantial gainful employment and that plaintiff had severe impairments. Neither of these findings is challenged. Only the ALJ's finding that plaintiff's impairments were not functionally equivalent to any listed impairment is challenged.

The ALJ found that plaintiff did not have an extreme or marked limitation in any area of functioning. Plaintiff argues that he has either a marked or extreme limitation in the area of social development, and a marked limitation in the area of concentration, persistence, or pace. With respect to the area of social development, the ALJ explained his decision as follows:

> Although claimant's problems at school persist (e.g., one suspension and a number of in-school incidents), the undersigned concludes that, when taking his medication as directed by his physician, claimant demonstrates only a moderate impairment of social functioning.... Claimant seems to function best "in a structured, calm setting, with relatively few people." Claimant does have friends, is generally compliant in his treatment, and he shows a willingness to improve his interactions with others. School records also list as a strength claimant's ability to interact one-on-one with an adult. Thus, while the under-

signed can accept that claimant experiences limitations in this area of functioning, the medical record shows that, when claimant is on prescribed medication, these limitations are less than marked in severity.

Regarding the area of concentration, persistence, or pace, the ALJ stated:

> In the concentration, persistence, or pace area of development, claimant has a moderate but less than a "marked" limitation of functioning. Not surprisingly, because of claimant's ADHD, he often has difficulty focusing and sitting still.

> .    .    .    .    .

> ■ Claimant attests to the soothing effects of his medication and the medication's positive impact on his attentiveness. Claimant is in special education classes and is doing average work, according to his grandmother. Also, based on the June 1997 Individual Educational Program Analysis of claimant by his teacher, he has many academic strengths....

The court concludes that there is substantial evidence in the record to support the ALJ's decision. Both parties focus on the ALJ's statement that "when [plaintiff] is on prescribed medication, these limitations are less than marked in severity." When an impairment can be controlled by medication, a claimant is not disabled unless he has a justifiable reason for refusing to take the medication. See *Kataria v. Callahan,* No. 97–5050, 1997 WL 603778, at *1 (10th Cir. Oct.1, 1997); 20 C.F.R. § 416.930. The key issue, then, is whether substantial evidence in the record supports the ALJ's finding that plaintiff's impairments can be controlled by medication.

Plaintiff contends that the ALJ's finding is not supported by the record because the

evidence shows that his problems persisted at school despite the fact that he was taking medication. He claims that the ALJ failed to consider these continuing problems. The court disagrees. The ALJ acknowledged that plaintiff's problems persisted; he merely elected to give more weight to the evidence touting plaintiff's strengths. This court may not reweigh the evidence. See *Hamilton*, 961 F.2d at 1500.

While the evidence shows that plaintiff continued to have problems at school after beginning his medication, the evidence also shows that he had many "good" days after beginning his medication. His grandmother told one of his case managers in March of 1998 that plaintiff was getting in trouble only "occasionally" at school. Moreover, the record reflects that plaintiff had friends, many academic strengths, and a willingness to improve his interactions with others.

Furthermore, plaintiff's continuing problems can be explained by evidence that plaintiff failed to take his medication consistently or at appropriate times. While plaintiff's grandmother testified that plaintiff consistently took his medication, reports by plaintiff's teachers and case managers indicate that he missed dosages or took dosages at the wrong times. The record also reflects many times that plaintiff and/or his grandmother missed medication appointments. The court concludes that the record as a whole contains substantial evidence from which a reasonable mind could conclude that plaintiff sometimes neglected to take his medication on a regular basis, thereby explaining why "[his] problems at school persist[ed]." [3]

The court also notes that the record includes numerous references to plaintiff's medication "wearing off" and indications that plaintiff's teachers could tell when his medication took effect and wore off. Such references and indications suggest to the court that plaintiff's medication had a positive effect on his behavior; otherwise, his teachers would be unable to tell when it took effect and/or wore off.

After reviewing the record, the court concludes that a reasonable mind could find the evidence in the record adequate to support the ALJ's conclusion that plaintiff's impairments were controllable by his medication and that plaintiff was not disabled. See *Castellano*, 26 F.3d at 1028.

IT IS, THEREFORE, BY THE COURT ORDERED that the decision of the Commissioner is affirmed.

The case is closed.

**IT IS SO ORDERED.**

---

**3.** The ALJ noted both that "the grandmother admits that she doesn't always administer [plaintiff's] doses on a regular basis" and that plaintiff "is generally compliant with his treatment." The court does not find these statements irreconcilably inconsistent. "Generally compliant" does not necessarily indicate that plaintiff always took his medication. Furthermore, the ALJ cited a letter written in July of 1997 to support the statement that plaintiff was "generally compliant." At that time, plaintiff had only been on his medication for a little over three months.