**United States Court of Appeals**

**FOR THE EIGHTH CIRCUIT**

_____

No. 97-3542

_____

Searcy Rucker, for Jacob Rucker,   *
                                     *

        Plaintiff-Appellant,     *  Appeal from the United States
                                     *  District Court for the
   v.                        *  Eastern District of Arkansas.
                                     *

Kenneth S. Apfel, Commissioner of  *
the Social Security              *
Administration,[1]               *
                                     *

        Defendant-Appellee.

_____

Submitted: February 10, 1998
                Filed: April 20, 1998

_____

Before RICHARD S. ARNOLD, Chief Judge, HANSEN, Circuit Judge, and
    LIMBAUGH,[2] District Judge.

_____

HANSEN, Circuit Judge.

---

[1]Kenneth S. Apfel has been appointed to serve as Commissioner of the Social Security Administration and is automatically substituted as appellee. See Fed. R. App. P. 43(c)(1).

[2]The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri, sitting by designation.

Searcy Rucker, on behalf of her son Jacob Rucker, appeals the district court's[3] grant of summary judgment in favor of the Social Security Administration, affirming the Commissioner's denial of Jacob's application for children's Supplemental Security Insurance (SSI) disability benefits. We affirm.

I.

Searcy Rucker, on behalf of her son, Jacob, applied for children's SSI benefits, alleging disability due to a learning disability. The Social Security Administration denied the claim both initially and upon reconsideration. Jacob requested and received a hearing before an Administrative Law Judge (ALJ) in 1994. At that time, Jacob was 13 years old and in the sixth grade. He was attending special education classes in school and had been held back a year when he was in kindergarten.

Jacob was represented by counsel at the hearing. He testified that he gets along well with others but admitted that he has a temper. Jacob's mother testified that he has difficulty getting along with other children. She said that they tease him because he is slow and that he explodes if he does not get his way. She also testified that Jacob suffers from ear and stomach problems.

His sixth grade special education teacher reported that Jacob had no disciplinary problems and no problems getting along with peers or teachers. She reported that he was functioning at a third grade level in math and a fourth grade level in reading. She indicated that Jacob needs constant reassuring that he is doing his work correctly, but noted that he works very hard and always completes his assignments on time.

_____

[3]The Honorable Henry L. Jones, Jr., United States Magistrate Judge for the Eastern District of Arkansas, trying the case by the consent of the parties pursuant to 28 U.S.C. § 636(c) (1994).

Medical records indicate that Jacob was slow to reach developmental milestones in early childhood. He was struck by a car at age four. Other medical conditions included in the reports were colds, sore throats, coughs, ear infections, and the flu. Jacob passed a vision and hearing screening at school in 1991. In a 1989 mental health evaluation, Jacob scored a verbal IQ of 94, a performance IQ of 80, and a full scale IQ of 85 on the Weschler Intelligence Scale for Children-Revised, placing him in the low average classification of intelligence. Upon reevaluation in 1992, Jacob scored a verbal IQ of 78, a performance IQ of 69, and a full scale IQ of 71. The results of this evaluation placed him in the borderline classification of intelligence.

Following the hearing, the ALJ found that Jacob's intellectual functioning is within the borderline range, which the ALJ concluded is a severe impairment. Nevertheless, after considering his overall health, functioning level, and cognitive abilities, the ALJ found that Jacob's impairments do not meet or equal a listed impairment.

Specifically, the ALJ found that Jacob has no significant physical health problems, that he gets along well with his peers and teachers, and that he functions in a manner appropriate to his age. The ALJ found that although Jacob is overly sensitive to failure and needs constant reassurance and encouragement, he is motivated to succeed. The ALJ specifically mentioned only two IQ scores — the full scale IQ score of 71 in 1992, and the full scale IQ score of 85 in 1989. The ALJ concluded that Jacob's limited cognitive functioning ability is not limited enough to meet the disability requirements. Thus, the ALJ denied benefits, and the appeals council denied review of that decision.

Jacob's mother then sought judicial review in the district court. The district court held that the ALJ's decision is supported by substantial evidence and accordingly granted summary judgment to the Commissioner. Jacob's mother now appeals, contending that the ALJ's decision is not supported by substantial evidence because

Jacob has a listed impairment of mental retardation, evidenced by his IQ performance score of 69 and his other impairments. Alternatively, she contends that Jacob suffers "marked and severe" limitations under the newly enacted standard for determining whether a child is disabled under the Social Security Act.

II.

We review the Commissioner's denial of a child's SSI disability benefits by considering whether the decision is supported by substantial evidence. Briggs v. Callahan, No. 97-1488, 1998 WL 119768, at *1 (8th Cir. Mar. 19, 1998); Young ex rel. Trice v. Shalala, 52 F.3d 200, 201-02 (8th Cir. 1995). Substantial evidence exists when a reasonable mind would conclude that the evidence is adequate to support the decision, "consider[ing] evidence that detracts from the Commissioner's decision, as well as evidence that supports it." Briggs, 1998 WL 119768, at *1.

Under the standards applicable at the time of the ALJ's decision, a child under the age of 18 is entitled to disability benefits if the child suffers from a "medically determinable physical or mental impairment of comparable severity" to one that would disable an adult. 42 U.S.C. § 1382c(a)(3)(A) (1994); see Sullivan v. Zebley, 493 U.S. 521, 529 (1990). A four-part test requires the ALJ to inquire into: (1) whether the child was currently engaged in substantial gainful activity; (2) whether the child suffered severe impairments or a combination of severe impairments; (3) whether the child's impairments met or equaled any listed impairment; and (4) if no listed impairment is met, the child may still be found disabled if the child's physical or mental impairments so limited his ability to function independently in an age-appropriate manner that they are "of comparable severity" to those that disable adults. 20 C.F.R. § 416.924(b)-(f) (1995). In this case, the ALJ determined that Jason is a student, that his borderline intelligence is a severe impairment, but that his impairments together do not meet or equal a listed impairment and are not of comparable severity to those that would disable an adult.

-4-

On August 22, 1996, prior to the district court's review of the ALJ's decision,

the President signed into law the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, which included a new standard for defining childhood disabilities under the Social Security Act. See Pub. L. No. 104-193, 110 Stat. 2105, 2188 (1996). The new statute provides that a child is considered disabled if the child has ?a medically determinable physical or mental impairment, which results in marked and severe functional limitations" and lasts for a period of not less than 12 months. 42 U.S.C.A. § 1382c(a)(3)(C)(i),(ii) (West Supp. 1998). This new legislation discards the ?comparable severity" test of the old standard in favor of a showing of ?marked and severe functional limitations." See Nelson v. Apfel, 131 F.3d 1228, 1234 (7th Cir. 1997). We have held that this new test imposes a more stringent standard for evaluating childhood disability claims than the earlier test. See Briggs, 1998 WL 119768, at *2. Because Jacob's case was pending at the time the new legislation was enacted, the new legislation applies to the case at hand. See id. Nevertheless, if a claim was properly denied under the old standard, "it must also be denied under the new, more stringent, standard." Id. Therefore, we apply the older, more lenient standard, as did the ALJ, and we conclude that the claim was properly denied.

Jacob's mother argues that the ALJ's determination that Jacob's impairments do not meet the listed impairment for mental retardation is not supported by substantial evidence. A child satisfies the mental retardation listing and is disabled when the child has "[1] [a] verbal, performance, or full scale IQ of 60 through 70 and [2] a physical or other mental impairment imposing additional and significant limitation of function." 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.05(D).

Jacob's 1992 performance IQ score of 69 meets the first prong of the listing. See Briggs, 1998 WL 119768 at *2. The ALJ's decision did not even mention this score. The Commissioner argues that the ALJ did not have to accept the lone IQ score of 69 as valid, citing Gwathney v. Chater, 104 F.3d 1043, 1044-45 (8th Cir. 1997) (holding claimant was not disabled where her alleged severe mental impairment, evidenced by

IQ scores in the 60's, was inconsistent with her intellectual activities), and Mackey v. Shalala, 47 F.3d 951, 953 (8th Cir. 1995) (holding appeals council was not required to conclude the listing was met by a lone IQ score of 65 where that score was inconsistent with the medical evidence before the ALJ). The present case is distinguishable. Here, the ALJ gave no reasons for discrediting the lone IQ score of 69. Instead, the ALJ merely ignored the score and cited Jacob's higher IQ scores from the 1989 evaluation. We agree with Jacob's mother that the 1989 scores were no longer valid pursuant to Social Security Regulations at the time of the 1994 hearing. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.00(D) (stating IQ scores obtained between ages 7 and 16 are valid for only two years when the score is 40 or above). Thus, we conclude that the 69 IQ score met the first prong of the listing.

The second prong of the listing, requiring "a physical or mental impairment imposing an additional and significant limitation of function," § 112.05(D), is met when a claimant "has a physical or additional mental impairment that has a 'more than slight or minimal' effect on his ability to perform work." Sird v. Chater, 105 F.3d 401, 403 (8th Cir. 1997) (quoting Cook v. Bowen, 797 F.2d 687, 690 (8th Cir.1986), and discussing the listing at § 12.05(C), which is the adult standard for mental retardation). The additional impairment need not be disabling in and of itself but need only result in a significant work-related limitation of function to satisfy the adult standard. See id.

Jacob's mother argues that Jacob is "plagued" by chronic bronchitis, earaches, and some emotional difficulties. (Appellant's Br. at 15.) There is no evidence in the record that Jacob's ear infections and bronchitis have caused any hearing loss, permanent breathing problems, or any functional restrictions or limitations. He attends class regularly and participates in activities like other children. Jacob has been hospitalized on account of these ailments only on rare occasions, and these conditions are mostly treated with nothing more than antibiotics. While reports of the school psychologist document some emotional struggles, Jacob has never sought mental health treatment. His teacher's observations indicate that Jacob is well-behaved, gets along

well with the other children, has no disciplinary problems, and is a hard worker. Thus, substantial evidence supports the ALJ's conclusion that the additional alleged impairments do not result in a significant limitation of function sufficient to satisfy the second prong of the listing.

The fourth step of the evaluation process under the old standard provides that "[e]ven if a listing is not satisfied, a child may nonetheless be disabled if the child's impairment is of comparable severity to that which would disable an adult." Briggs, 1998 WL 119768, at *3 (citing 20 C.F.R. § 416.924(b)). The ALJ's finding at this step is also supported by substantial evidence. Our review of the record indicates that Jacob's impairments do not substantially reduce his ability to function "independently, appropriately, and effectively" in an age-appropriate manner. See 20 C.F.R. § 416.924(f).

Jacob's mother also claims that Jacob suffers "marked and severe" limitations as is required under the new legislation. Because we agree with the ALJ's determination that Jacob "is not disabled under the old, more lenient, standard," there is no reason for us to consider Jacob's case under "the new, more stringent, standard." Briggs, 1998 WL 119768, at *2.

III.

Accordingly, we affirm the judgment of the district court granting the Commissioner's motion for summary judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-7-