**Linda HALL on behalf of Lemanda LEE, Plaintiff,**

v.

**Kenneth APFEL, Commissioner of the Social Security Administration, Defendant.**

**No. 99 C 6963.**

United States District Court, N.D. Illinois, Eastern Division.

Dec. 5, 2000.

---

Legal Assistance Fdn. of Chicago (Carl D. Flaningam), Chicago, IL, for plaintiff.

Assistant U.S. Attorney Jack Donatelli, Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

KEYS, United States Magistrate Judge.

The Plaintiff, Linda Hall ("Ms.Hall"), on behalf of Lemanda Lee ("Lemanda"), pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), moves this Court for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure reversing the decision of the Commissioner of Social Security ("Commissioner") which denied her application for Supplemental Security Income. In the alternative, Plaintiff moves that the case be remanded to the Commissioner for further proceedings. The Commissioner has filed a Cross–Motion for

Summary Judgment in his favor. For the reasons set forth below, the Court grants Plaintiff's Motion in part and denies the Commissioner's Motion. Specifically, the Court remands the case to the Commissioner for further proceedings consistent with this Opinion.

### Procedural History

On February 28, 1997, Ms. Hall filed an application for Supplemental Security Income on behalf of her niece and ward Lemanda Lee, alleging that Lemanda had been disabled since January 1, 1993 on the basis of a learning disability. (R. at 98–99.)[1] On May 16, 1997, Ms. Hall's application was denied. (R. at 69–71.) On June 7, 1997, Ms. Hall filed a request for reconsideration. (R. at 72.) Upon reconsideration, the application was again denied on August 8, 1997. (R. at 74–76.) On August 22, 1997, Ms. Hall filed a request for a hearing. (R. at 78.) An expedited hearing was held on February 3, 1998, (R. at 200–09), and a hearing on the merits was held before Administrative Law Judge ("ALJ") Percival Harmon on April 16, 1998, (R. at 18–65.) On July 27, 1998, the ALJ issued his decision, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 9–17.) On August 5, 1998, Ms. Hall filed a Request for Review of the ALJ's decision with the Commissioner's Appeals Council. (R. at 8.) On September 2, 1999, the Appeals Council denied Ms. Hall's request, concluding that there was no basis for review, (R. at 5). This denial stands as the final decision of the Commissioner and is the subject of the Motions now before the Court.

### Factual Background

**A. Testimony of Claimant and her Guardian**

Lemanda Lee, the claimant, was born on May 7, 1986. (R. at 27.) She lives with her aunt, two sisters, and cousin. (*Id.*) At the time of the April 16, 1999 hearing, Lemanda was in the sixth grade at Mount Vernon Elementary School. (R. at 28.) She testified that she was in a special class, but did not know why. (*Id.*) Her favorite subject is math, and her least favorite is reading. (R. at 30–31.) She testified that she could not understand the words she reads or remember what she has read. (R. at 31.) When asked if she could read from her reading textbook, she testified that she could not do so without help. (R. at 38.)

Lemanda has friends at school. (R. at 29–30.) She sings in a choir at church, and rehearses every Tuesday. (R. at 34.) She testified that she memorizes the words to the music. (*Id.*) She can tell time and fix herself a snack, but cannot take a telephone message. (R. at 36–37.)

The claimant's aunt and guardian, Linda Hall, also testified at the April 16, 1999 hearing. Ms. Hall testified that Lemanda could recognize words, but could not comprehend their meaning. (R. at 41.) Ms. Hall testified that Lemanda's inability to read causes her great embarrassment. (R. at 40.) Lemanda enjoys watching television, but cannot explain what a program was about if asked. (R. at 51.) Likewise, she cannot take a phone message because she cannot remember what the person has said, nor can she write it down because she does not comprehend what she has heard. (*Id.*) According to Ms. Hall, Lemanda has to be watched when cooking because she will forget what she is cooking or leave the stove on. (R. at 43.) She has trouble crossing the street, and becomes confused. (R. at 44.)

Lemanda and her two sisters attend counseling sessions to help them cope with past neglect and abuse. (R. at 42–43, 48–49.) Ms. Hall testified that Lemanda hides her feelings, and is afraid to talk about things that bother her, such as her sister's recent suicide attempt. (R. at 30, 48.)

---

**1.** References are to the certified administrative record prepared by the commissioner and filed with this Court pursuant to 42 U.S.C. § 405(g).

## B. Medical Evidence

On March 27, 1997, Dr. William R. Burwell performed an "evaluation of cognitive abilities," and administered the Wechsler Intelligence Scale for Children, Third Edition ("WISC–III"). (R. at 174.) The test yielded IQ scores of 71 (verbal), 62 (performance) and 64 (full scale). (R. at 175.) The verbal score is in the borderline intelligence range, and the other two scores are in the retarded range. (Id.) Dr. Burwell concluded that Lemanda functions in the mild range of mental retardation, and has difficulty with reading, visual-spatial organization, visual concentration and fund of information. (R. at 176.) He stated that the results of his examination were indicative of her present level of functioning. (R. at 176.)

On July 21, 1997, Dr. Harley J. Rubens performed a psychiatric evaluation of the claimant. (R. at 184.) Prior to the examination, Dr. Rubens reviewed Dr. Burwell's report. (Id.) Dr. Rubens diagnosed Lemanda with a "Situational Adjustment Disorder with Disorder of Mood and Conduct" and a "Developmental Reading Disorder." (R. at 186.) Dr. Rubens explained that his report was different from Dr. Burwell's in that it was "not as detailed in the academic or testing type area, [and] would include that the patient was having some difficulties of mood." (R. at 185.) Dr. Rubens made no indication that he disagreed with Dr. Burwell's diagnosis of mild mental retardation, or that the IQ scores were invalid.

Dr. Remedios Sales, a family practitioner, submitted a letter dated January 9, 1998, stating that Lemanda "has a learning disability with severe short term and long term memory deficiency and is psychologically and emotionally handicapped due to a past history of neglect and abuse." (R. at 194.) Dr. Sales' care of Lemanda has been limited to physical examinations and immunizations. (Id.) Dr. Sales made no indication that she had performed any psychiatric or intelligence tests on the claimant.

Dr. Carl Hermsmeyer, Ph.D. reviewed the documents in Lemanda's file on July 29, 1997, but did not examine Lemanda herself. Dr. Hermsmeyer's form states that he used Dr. Ruben's psychiatric report and Dr. Sales' letter as sources. (R. at 191.) Dr. Hermsmeyer refers to "borderline IQ scores" but does not mention Dr. Burwell's report. Dr. Hermsmeyer did not indicate that he perceived the IQ scores he reviewed to be invalid or inaccurate. Dr. Hermsmeyer determined that Lemanda had a marked limitation in cognitive/communicative functions, but found no evidence of limitation in other areas. (R. at 189.) The form acknowledges the diagnosis of situational mood disorder, and states: "It is not felt that the claimant's conditions are of a disabling nature." (R. at 191.) Dr. Hermsmeyer determined that Lemanda had severe impairments which did not meet or equal the severity of a listed requirement. (R. at 188.)

Lemanda is enrolled in an Individualized Education Program at Mount Vernon Elementary School because she is considered to be learning disabled. (R. at 155–73.) A May 20, 1997 evaluation indicated that Lemanda's reading skills were at a first grade level, her math skills were at a fourth grade level, and her spelling was at the kindergarten level. (R. at 157.) At that time, Lemanda was eleven years old. Her teacher, Kathleen Roberts, confirmed that Lemanda experiences severe limitations in the classroom, that she represses her feelings, and that she has difficulty comprehending what she reads or is told. (R. at 192–93, 195–96.)

Lemanda's therapist, Suzanne Bogue, concurs that Lemanda has learning disabilities, with "severe short term and long term memory deficiency." (R. at 187, 197.) Ms. Bogue diagnosed Lemanda with depression due to past neglect and abuse. (R. at 187.)

At the hearing held on April 16, 1999, Dr. Marjorie Ardon, a medical expert, testified that Lemanda "definitely has an impairment that's quite obvious." (R. at 56.)

Dr. Ardon opined that the IQ scores and report from Dr. Burwell's examination were valid. (R. at 56.) Dr. Ardon did not review any of Lemanda's school records. (R. at 52.) She characterized Lemanda's IQ scores as "borderline." Dr. Ardon admitted that she did not understand the difference between § 112.05D and § 112.05E. (R. at 57.) At the hearing, Dr. Ardon evaluated Lemanda's claim under § 112.05E and determined that Lemanda did not meet the criteria for mental retardation under § 112.05E. (R. at 57–63.)

## C. The ALJ's decision

In his July 27, 1998 decision, the ALJ found that the medical evidence established that Plaintiff has a learning disability and an adjustment disorder. (R. at 14.) He held that these impairments impact on Lemanda's ability to perform the full range of basic activities and are therefore "severe." (R. at 14.) The ALJ concluded that Plaintiff's impairments neither met nor equaled the level of severity contemplated for any impairment listed in Appendix 1, Subpart P, Regulations No. 4. (*Id.*) He found no evidence of significant mental retardation and no evidence of significant deficits in adaptive mental, social, and personal functioning. (*Id.*)

The ALJ determined that Lemanda does not have any extreme broad functional limitations or two marked broad functional limitations. (R. at 14–15.) He agreed with Dr. Ardon that Lemanda has a marked degree of limitation in cognitive functioning and a less than marked degree of limitation in concentration, persistence and pace, and found that she does not have any limitation in communicative, motor, social or personal functioning. (R. at 15, 16.)

In making his decision, the ALJ reviewed Dr. Burwell's report with the IQ scores of 71, 62, and 64, and the diagnosis of mild mental retardation. (R. at 14.) He considered Dr. Rubens' diagnosis of a situational adjustment disorder and a developmental reading disorder. (*Id.*) The ALJ cited Dr. Sales' report that the claim-

ant is physically fit, but that she has a learning disability, with severe short term and long term memory deficiency, and that she is psychologically and emotionally handicapped due to a past history of neglect and abuse. (*Id.*) The ALJ also noted that Lemanda's teacher, Kathleen Roberts, and her therapist, Suzanne Bogue, confirmed that the claimant has a severe short- and long-term memory deficiency, resulting in problems at school. (*Id.*) The ALJ did not indicate that the reports were not credible. He found that the testimony given by Lemanda and Ms. Hall was credible, but not indicative of a disability. (*Id.*)

### Standard of Review

■ In reviewing the Commissioner's (here the ALJ's) decision, the Court may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir.1994). Rather, the Court must accept findings of fact that are supported by "substantial evidence," 42 U.S.C. § 405(g), where substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Herron,* 19 F.3d at 333 (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). The ALJ must consider all relevant evidence and may not select and discuss only that evidence that favors his ultimate conclusion. *Herron,* 19 F.3d at 333. Where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner (or ALJ), not the courts. *Herr v. Sullivan,* 912 F.2d 178, 181 (7th Cir. 1990); *see also Stuckey v. Sullivan,* 881 F.2d 506, 509 (7th Cir.1989) (holding that the ALJ has the authority to assess medical evidence and give greater weight to that which he finds more credible). This Court is limited to determining whether the Commissioner's final decision is supported by substantial evidence and based upon proper legal criteria. *Ehrhart v.*

*Secretary of Health and Human Services,* 969 F.2d 534, 538 (7th Cir.1992).

■ This does not mean that the Commissioner (or ALJ) is entitled to unlimited judicial deference, however. In addition to relying on substantial evidence, the ALJ must articulate his analysis at some minimal level and state his reasons for accepting or rejecting "entire lines of evidence," although he need not evaluate in writing every piece of evidence in the record. *See Herron,* 19 F.3d. at 333; *see also Young v. Secretary of Health and Human Services,* 957 F.2d 386, 393 (7th Cir.1992) (holding that the ALJ must articulate his reason for rejecting evidence "within reasonable limits" in order for meaningful appellate review); *Guercio v. Shalala,* No. 93 C 323, 1994 WL 66102, at *9 (N.D.Ill. March 3, 1994) (holding that the ALJ need not spell out every step in his reasoning, provided he has given sufficient direction that the full course of his decision may be discerned) (citing *Brown v. Bowen,* 847 F.2d 342, 344 (7th Cir.1988)).

■ Under current law, a child is disabled if he or she has a medically determinable impairment that results in "marked and severe functional limitations" and meets the twelve month duration requirement of the Act. *See* 42 U.S.C. § 1382c(a)(3)(C)(i). The Social Security Administration has adopted a three-step sequential analysis to determine whether a child is disabled. 20 C.F.R. § 416.924(a)–(d). The first step is to determine whether the child is engaged in any substantial gainful activity. The second step is to decide whether the child has a medically severe impairment or combination of impairments. The third step is to determine whether the child's impairment(s) meet(s) or equal(s) any of the Listing of Impairments contained in Appendix 1 of 20 C.F.R. pt. 404, subpt. P. If the impairment meets or equals one of the Listing of Impairments, then the child is considered disabled. Otherwise, the Commissioner must determine if the limitations caused by the child's impairments are functionally equivalent to one of the listed impairments. 20 C.F.R. § 416.926a. A negative answer at any step precludes a finding of disability. 20 C.F.R. § 416.924a. The claimant seeking benefits bears the burden of proving that his or her impairment meets or equals a listed impairment. *Maggard v. Apfel,* 167 F.3d 376, 380 (7th Cir.1999).

### Analysis

The ALJ found in favor of the claimant at steps one and two of the sequential evaluation, finding that she had not participated in any substantial gainful activity and that she had a combination of impairments that were severe. (R. at 13–14.) At step three, however, the ALJ found that Lemanda's impairments, in combination, did not meet or equal any of the impairments listed in the regulation.[2] (R. at 14.) The Court, having carefully reviewed the entire record upon which the ALJ based his decision, concludes that his analysis of the medical records and the conclusions drawn therefrom are not supported by substantial evidence in the record as a whole.

For purposes of the Social Security Administration, mental retardation in children is defined as:

significantly subaverage general intellectual functioning with deficits in adaptive functioning ... The required level of severity for this disorder is met when the requirements of A, B, C, D, E, or F are satisfied ... (D) A valid verbal, performance, or full scale IQ of 60 through

**2.** In his decision, the ALJ applied § 112.05E, and does not indicate why Lemanda does not qualify for SSI under § 112.05D. The testifying medical expert, Dr. Ardon, admitted that she did not know whether to apply § 112.05D or § 112.05 E. Receiving no guidance from the ALJ, she proceeded to apply § 112.05E. In the motions before the Court, Plaintiff argues that the ALJ should have applied § 112.05D, and the Commissioner does not contend that § 112.05D does not apply.

70 and a physical or other mental impairment imposing additional and significant limitation of function.

20 C.F.R. Part 404, Subpart P, App. 1, § 112.05. (The same standard applies to adults under 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05C.)[3]

Plaintiff contends that she meets the requirements for a finding of mental retardation under § 112.05D (not § 112.05E, which the ALJ applied), because she (1) has a valid IQ score of 60 through 70 and (2) a physical or other mental impairment imposing additional and significant limitation of function. Plaintiff's Memorandum in Support of Her Motion for Summary Judgment ("Pl.'s Mem.Supp.Summ.J.") at 4–5.

In contrast, the Commissioner argues that a claimant must establish *three* elements to meet § 112.05D, not just two: (1) The claimant must be mentally retarded; (2) the claimant must have an IQ between 60 and 70; and (3) the claimant must have an additional and significant limitation of function. Defendant's Memorandum in Support of Motion for Summary Judgment ("Def.'s Mem.Supp.Summ.J.") at 7. The Commissioner contends that, because the claimant has not asserted that she is mentally retarded (step one), she cannot meet the requirements of § 112.05D. Def's Mem.Supp.SummJ. at 7–8.

There appears to be a split of authority as to whether a valid IQ score of 60 to 70 automatically satisfies the first step(s) of 112.05D and its adult analog, 12.05C. The text of the regulation supports the Commissioner's interpretation, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00, and the Commissioner cites Acquiescence Ruling 98–2(8), 63 Fed.Reg. 36, 9279, 9280, which suggests the same three-part test.

*See also Anderson v. Apfel*, 996 F.Supp. 869 (E.D.Ark.1998) (holding that IQ score of 60 to 70 does not automatically satisfy the first prong of 12.05C). While not explicitly addressing whether a two or three part test should be used, the case law in the Seventh Circuit, as well as many other circuits, applies a two-part test.

The Seventh Circuit has consistently construed the mental retardation listings to mean that "a claimant is considered disabled due to mental retardation when he has a valid verbal, performance, or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir.1999) (internal quotes omitted); *see also Thomas v. Secretary of Health and Human Services*, No. 98–1185, 1998 WL 516815, at *2 (7th Cir. Aug.17, 1998) (describing a two-part test for mental retardation under § 12.05C); *Fisher v. Bowen*, 869 F.2d 1055, 1055 (7th Cir.1989) (stating that an individual with an IQ between 60 and 69 and an additional and significant limitation of function is deemed to be totally disabled). *Accord, Rucker v. Apfel*, 141 F.3d 1256, 1259–60 (8th Cir.1998); *Riley v. Apfel*, 162 F.3d 1162, 1998 WL 553151, at *4 (6th Cir. 1998); *Sird v. Chater*, 105 F.3d 401, 402 (8th Cir.1997); *Hinkle v. Apfel*, 132 F.3d 1349, 1351 (10th Cir.1997); *Crayton v. Callahan*, 120 F.3d 1217, 1219–20 (11th Cir. 1997).

■ Nonetheless, whether this Court employs a two or three-part test, the Plaintiff will still prevail because she has, indeed, established that she is mentally retarded (prong one of the Commissioner's test).[4] Dr. Burwell diagnosed her as mild-

---

**3.** Cases referring to 112.05D and 12.05C are used interchangeably. *See Rucker v. Apfel*, 141 F.3d 1256, 1259–60 (8th Cir.1998); *Bryant v. Apfel*, 141 F.3d 1249, 1252 (8th Cir.1998); *Davis v. Shalala*, 985 F.2d 528, 533 (11th Cir.1993).

**4.** The Commissioner argues that the claimant has waived her argument that she meets the requirements of 112.05D by failing to argue that she is mentally retarded. Although Ms. Hall's entries on the application forms state that the basis for the claim is a "Learning Disability," (R. at 107), the record is replete with references to mental retardation. Plain-

ly mentally retarded, and no examining medical professionals contested Dr. Burwell's report. Significantly, the ALJ did not give any indication that Dr. Burwell's diagnosis of mild mental retardation was not credible. While the Commissioner argues that the ALJ could reasonably reject Dr. Burwell's diagnosis of mental retardation, this argument is premised on proof that there is medical evidence in the record to the contrary. Although none of the other medical records state that Lemanda is mentally retarded, none purported to evaluate her for mental retardation.[5] Lemanda's school records and the letters of Dr. Sales, Ms. Roberts, and Ms. Bogue all attest that Lemanda suffers from a learning disability, but none of them suggest that Lemanda is not mentally retarded, nor is there an indication that any of these individuals administered an intelligence test or are otherwise qualified to diagnose mental retardation. In sum, Dr. Burwell found that Lemanda is mentally retarded, and there is no substantial evidence to the contrary. Therefore, even if the court applies the three-part test advocated by the Commissioner, part one, a finding of mental retardation, has been established.

tiff's Statement of Material Facts contains a section entitled "Evidence of Mental Retardation," and the ALJ considered Lemanda's claim under the mental retardation listings of 112.05E. Therefore, the Court finds that the claimant has not waived her argument that she is mentally retarded.

5. Although Dr. Ardon and Dr. Hermsmeyer concluded that Lemanda did not meet or equal a listing, neither examined Lemanda. Generally, an examining physician's report is to be afforded more weight than a nonexamining physician's. 20 C.F.R. § 404.1527(d)(1). Furthermore, Dr. Ardon's testimony is based on an incomplete review of the record, (R. at 52–54, 191), and her testimony indicates uncertainty as to the definitions of mental retardation under 112.05 (R. at 56–57). Notably, Dr. Ardon informed the ALJ that she did not understand the difference between 112.05D and 112.05E, and asked the ALJ to explain. (R. at 57.) The ALJ refused, and Dr. Ardon proceeded to evaluate Lemanda's claim under 112.05E and not 112.05D. In addition, Dr. Ardon misread Lemanda's IQ scores. Dr. Ardon character-

Applying the next part of the analysis under § 112.05D, the IQ scores from Dr. Burwell's examination on March 27, 1997 were not contested by anyone who examined the claimant or her records, and, significantly, they appear to have been accepted by the ALJ. (R. at 14.) It is undisputed that Lemanda's performance and full scale IQ scores of 62 and 64 fall within the range specified by § 112.05D. The ALJ gave no reasons for which he might discredit the results of the WISC–III administered by Dr. Burwell.

The last part of the test for mental retardation under § 112.05D is "a physical or other mental impairment imposing additional and significant limitation of function."[6] 20 C.F.R. Part 404, Subpart P, App. 1, § 112.05D. This language has been held to require an additional impairment that is more than slight or minimal but less than severe. *Sird v. Chater,* 105 F.3d 401, 403 (8th Cir.1997); *Hinkle v. Apfel,* 132 F.3d 1349, 1352 (10th Cir.1997); *Warren v. Shalala,* 29 F.3d 1287, 1291 (8th Cir.1994); *Cook v. Bowen,* 797 F.2d 687, 690 (8th Cir.1986). The Social Security

ized Lemanda's IQ as borderline, yet of the three scores Dr. Ardon mentioned, the verbal score of 71 is the only one that could support a determination that an individual has borderline intellectual functioning. (R. at 56.) The other two scores are characteristic of mild mental retardation, and significantly, it is the lowest IQ score that is used in conjunction with listings § 12.05 and § 112.05. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00D (2000). Therefore, while Dr. Ardon characterized Lemanda as having borderline intellectual functioning, it appears that she misapplied the IQ scores, which clearly indicate that claimant's intellectual functioning was at the mentally retarded level. Finally Dr. Hermsmeyer did not review the entire record: in his report, he cites only Dr. Rubens and Dr. Sales' reports as sources. (R. at 191.)

6. Significantly, the Commissioner does not dispute, in his Motion for Summary Judgment, that Lemanda has satisfied the additional impairment requirement. Rather, the Commissioner's argument is solely concerned with whether the claimant was, indeed, mentally retarded, independent of the IQ scores.

Administration defines "additional and significant limitation of function" to mean "another distinct diagnosable impairment," which may be a learning disability. *Childhood Disability Evaluation Issues,* Social Security Administration Office of Disability, SSA Pub. No. 64–076 (March 1998), p. 49 & n. 3. A "significant limitation" does not have to be at the "marked" level, but only at the "moderate" level.

The ALJ found that Lemanda has a learning disability and an adjustment disorder, both of which are "severe" within the meaning of the Social Security Act. (R. at 16.) He also found that Lemanda has marked limitation in cognitive functioning and a less than marked limitation in concentration, persistence and pace. *(Id.)* Thus, the ALJ's findings as to the severity of Lemanda's learning disability and adjustment disorder met and surpassed the additional limitation requirement of § 112.05D, as did the finding of marked limitation in cognitive functioning.

■ Because the ALJ did not explain why Lemanda's IQ scores, coupled with her severe learning disability and severe adjustment disorder, did not satisfy 112.05D, the ALJ failed to provide a rational basis for the denial of benefits. *See Green v. Apfel,* 204 F.3d 780, 781 (7th Cir.2000); *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir.1999).

Upon remand, the ALJ should analyze whether claimant is disabled under § 112.05D—not § 112.05E. If the ALJ determines that Lemanda's impairments do not, in fact, satisfy § 112.05D, the record should be more fully developed, and the decision should explain why claimant's IQ scores—in conjunction with her severe learning disability and severe adjustment disorder—do not meet the listing for mental retardation under § 112.05D. The ALJ might wish to hear the testimony of doctors who have actually examined or treated Lemanda, as well as relevant school personnel and therapists. Finally, the ALJ may take any other actions not inconsistent with this Opinion.

*Conclusion*

The Court finds that the ALJ's determination that Lemanda Lee is not mentally retarded under the meaning of the Social Security Act is not supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's Motion for Summary Judgment be, and the same hereby is, denied.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment be, and the same hereby is, granted in part.

This cause is **REMANDED** to the Commissioner for further proceedings consistent with this Opinion.