**Elizabeth BROWN o/b/o Cathy Brown, Plaintiff,**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant**

**No. CIV.A. 02–2287–DJW.**

United States District Court, D. Kansas.

March 18, 2004.

**1154**

Daniel J. Devine, Kansas City, MO, Henry M. Stoever, Overland Park, KS, for Plaintiff.

David D. Zimmerman, Office of United States Attorney, Kansas City, KS, for Defendant.

### MEMORANDUM AND ORDER

WAXSE, United States Magistrate Judge.

Plaintiff, on behalf of her minor daughter Cathy, seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of Defendant Commissioner of the Social Security Administration ("Commissioner") denying her daughter's application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* The parties have filed their consent to jurisdiction by Magistrate Judge (doc. 8) pursuant to 28 U.S.C. § 636(c)(1) and Fed.R.Civ.P. 73. Plaintiff has filed a brief (doc. 21) seeking judicial review of the Commissioner's decision. The Commissioner has filed a brief in opposition (doc. 22).

The Court has reviewed the administrative record and the parties' briefs. For the reasons set forth below, the Court affirms the decision of the Commissioner.

### I. Standard of Review

 Pursuant to 42 U.S.C. § 405(g), a court may render "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court reviews the decision of the Commissioner to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision.[1] "Substantial evidence" is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2] In reviewing the record to determine whether substantial evidence supports the Commissioner's decision, the court may neither reweigh the evidence nor substitute its discretion for that of the Commissioner.[3] Evidence is not considered substantial "if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians) or if it really constitutes not evidence but mere conclusion."[4]

---

**1.** *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir.1994).

**2.** *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

**3.** *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir.2000) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

**4.** *Knipe v. Heckler*, 755 F.2d 141, 145 (10th Cir.1985) (quoting *Kent v. Schweiker*, 710 F.2d

The court also reviews the decision of the Commissioner to determine whether the Commissioner applied the correct legal standards.[5] The Commissioner's failure to apply the proper legal standard may be sufficient grounds for reversal independent of the substantial evidence analysis.[6] Accordingly, the court reviews the decision of the Commissioner to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision and to determine whether the correct legal standards were applied.[7]

## II. Procedural History

On February 25, 2000, Plaintiff, on behalf of her daughter, protectively filed an application for child's SSI based on disability under Title XVI. (See Certified Transcript of the Record ("Tr.") at 65–67.) The Commissioner denied the claim initially and upon reconsideration. (Tr. 42, 48–51) On July 5, 2001, the Administrative Law Judge ("ALJ") conducted a hearing on Plaintiff daughter's claim. (Tr. 25–38) Plaintiff and her daughter appeared at the hearing in person and with their attorney, Daniel J. Devine. (Tr. 27)

On August 10, 2001, the ALJ issued his decision, in which he concluded that Plaintiff's daughter is not disabled within the meaning of the Social Security Act. (Tr. 15–23) In reaching this conclusion, the ALJ determined that while Cathy's mild mental retardation qualifies as a severe impairment, it does not meet or equal in severity the criteria for any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17) As part of this determination, the ALJ found Cathy's claimed asthmatic condition to be not severe as it results in no more than minimal functional limitations. (Tr. 17) The ALJ further concluded that Cathy's impairments are not functionally equivalent in severity to any listed impairment in that they did not result in "marked" limitations in two functional domains or "extreme" limitations in one functional domain. (Tr. 23)

On September 12, 2001, Plaintiff requested a review of the hearing decision by the Appeals Council. (Tr. 7–8) The Appeals Council denied the request for review on April 25, 2002. (Tr. 5–6) The findings of the ALJ therefore stand as the final decision of the Commissioner in this case.

Plaintiff alleges in her daughter's application for benefits that her daughter became disabled and eligible to receive benefits on February 25, 2000. (Tr. 66) Plaintiff claims that her daughter is disabled due to learning disabilities and asthma under control. (Tr. 74)

At the time of the hearing before the ALJ, Cathy was eleven years of age (Tr. 16) and was in sixth grade. (Tr. 34–37) Although she was in sixth grade, she attended special education classes and read at a second grade level. (Tr. 34–35, 121)

## III. The ALJ's Findings

In his decision of August 10, 2001, the ALJ made the following findings:

1. Claimant ... is a child under the age of 18, and is currently 11 years of age.

2. Claimant has never performed substantial gainful activity.

110, 114 (3rd Cir.1983)).

5. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir.1994); *Washington v. Shalala,* 37 F.3d 1437, 1439 (10th Cir.1994).

6. *Glass,* 43 F.3d at 1395 (citing *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993)).

7. *Hamilton v. Sec'y of Health & Human Servs.,* 961 F.2d 1495, 1497 (10th Cir.1992).

3. Claimant has the following medically determinable impairment which is "severe" within the meaning of 20 CFR § 416–924(c): mild mental retardation (Verbal I.Q. score of 71, Performance I.Q. of 69 and Full Scale I..Q. score of 68). Claimant also has an asthmatic condition which is found to be not severe as it results in no more than minimal functional limitations.

4. Claimant's impairment(s) are not of a severity which medically meets or equals the severity of any impairment listed in Part B of Appendix 1 to Subpart P, 20 CFR Part 404 ("Listing of Impairment"). None of claimant's impairments are functionally equivalent in severity to any listed impairment.

5. Claimant does not have "marked" limitations in two functional domains or "extreme" limitations in one functional domain.

6. Subjective complaints are considered credible only to the extent that they are supported by the evidence of record as summarized in the text of this decision.

7. Claimant is found to be "not disabled" within the meaning of the Act.

(Tr. 22–23)

## IV. Analysis

### A. Determining Disability for Children

■ Disabled children under the age of eighteen from low-income families are entitled to receive cash benefits known as SSI under Title XVI of the Social Security Act.[8] In order to qualify for SSI: (1) the child's income and assets (including those imputed from the child's parents) must fall below a specified amount; and (2) the child must be "disabled," i.e., must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[9] The claimant seeking benefits bears the burden of proving that his or her impairment meets or equals a listed impairment.[10]

Social Security Regulations promulgated by the Commissioner, effective January 1, 2001, establish a three-step sequential evaluation process to be followed in a child disability case.[11] In the first step, the Commissioner must determine whether the child is engaging in substantial gainful activity; if so, a finding of nondisability is made and the claim is denied.[12] If the child is not engaged in substantial gainful activity, the Commissioner proceeds to the second step to determine whether the child has a severe medically determinable impairment or combination of impairments.[13] If the child is found to have an impairment that is severe, the Commissioner proceeds to the third and final step, in which the Commissioner determines whether the child's impairment meets or medically or functionally equals an impairment in the Listing of Impairments ("Listing").[14] An impairment will be found to cause "marked and severe functional limitations" if it

8. *McClain v. Barnhart,* 299 F.Supp.2d 309, 314 (S.D.N.Y.2004).

9. 42 U.S.C. § 1382c(a)(3)(C)(i) (2001).

10. *Hall ex rel. Lee v. Apfel,* 122 F.Supp.2d 959, 964 (N.D.Ill.2000).

11. 20 C.F.R. § 416.924 (2001).

12. 20 C.F.R. § 416.924(b) (2001).

13. 20 C.F.R. § 416.924(c) (2001).

14. 20 C.F.R. § 416.924(d) (2001).

meets or medically equals a listed impairment, or if it is functionally equal in severity to a listed impairment.[15] To be functionally equivalent, the child's limitations must be at least equal in severity and duration to limitations associated with a listed impairment.[16] Furthermore, the child's impairment must also meet the durational requirement of lasting or can be expected to last twelve months before the child can be found disabled.[17]

The "functionally equivalent" analysis requires the Commissioner to analyze six domains, which are "broad areas of functioning intended to capture all of what a child can or cannot do." [18] The six domains are: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being.[19]

The regulations explain that in evaluating a child claimant's ability to function in each of these domains, the Commissioner will seek information to help answer the following questions about whether the claimant's activities are typical of other children the claimant's age who do not have impairments: (1) What activities can the claimant perform? (2) What activities is the claimant unable to perform? (3) Which of the claimant's activities are limited or restricted compared to other children the claimant's age who do not have impairments? (4) Where does the claimant have difficulty with his/her activities-at home, in child care, at school, or in the community? (5) Does the claimant have difficulty independently initiating, sustaining, or completing activities? (6) What kind of help does the claimant need to do his/her activities, how much help is needed, and how often is the help needed? [20]

A finding of functional equivalence will be made only if a child has "marked" limitations in two domains of functioning, or an "extreme" limitation in one domain.[21] A "marked" limitation in a domain means the claimant's impairment interferes seriously with his or her ability to independently initiate, sustain or complete activities.[22] This may mean serious limitation exists in only one activity, "or when the interactive and cumulative effects of [the] impairment(s) limit several activities." [23] A "marked" limitation also may mean "a limitation that is more than moderate but less than extreme." [24]

An "extreme" limitation is the rating given to the worst limitations, and occurs in a domain when a claimant's impairment interferes very seriously with his or her ability to independently initiate, sustain, or complete activities.[25] An "extreme" limitation is more than "marked," but does not necessarily mean a total lack or loss of ability to function.[26]

---

**15.** 20 C.F.R. §§ 416.924(d), 416.926a (2001).

**16.** 20 C.F.R. § 416.926 (2001).

**17.** 20 C.F.R. §§ 416.906, 416.924(d)(1); *Davenport v. Apfel,* 151 F.Supp.2d 1270, 1272 (D.Kan.2001).

**18.** 20 C.F.R. § 416.926a(b)(1) (2001).

**19.** *Id.*

**20.** 20 C.F.R. § 416.926a(b)(2)(i)-(vi) (2001).

**21.** 20 C.F.R. § 416.926a(a) (2001).

**22.** 20 C.F.R. § 416.926a(e)(2)(i) (2001).

**23.** *Id.*

**24.** *Id.*

**25.** 20 C.F.R. § 416.926a(e)(3)(i) (2001).

**26.** *Id.*

## B. Alleged Points of Error

1. *Whether substantial evidence in the record supports the ALJ's determination that Cathy's impairments do not meet or functionally equal Listing 112.05D*

In her Brief Requesting Reversal of the Commissioner's Decision, Plaintiff contends that the Commissioner's finding that Cathy's impairments are not medically or functionally equivalent to any impairment is not supported by substantial evidence on the record as a whole. Specifically, she challenges the ALJ's determination that Cathy's asthmatic condition is not severe, and thus does not qualify as an additional and significant limitation of function under Listing 112.05D. She argues that the ALJ's finding that her daughter's asthmatic condition results in no more than minimal functional limitation, i.e., that is not severe, is not supported by the medical evidence of record. The Commissioner contends that substantial evidence in the record as a whole supports the ALJ's finding that Plaintiff did not have additional limitations which more than minimally limited her ability to function.

The introductory paragraphs to "112.00 Mental Disorders" explain how to apply the listings: "Listing 112.05 (Mental Retardation) contains six sets of criteria. If an impairment satisfies the diagnostic description in the introductory paragraph and any one of the six sets of criteria, [the Commissioner] will find that the child's impairment meets the listing." [27] Listing 112.05 Mental Retardation states that it is "[c]haracterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning." [28] The required level of severity for this disorder is met when the requirements in one of the six sets of criteria (A, B, C, D, E or F) are satisfied. [29]

To meet the severity requirement for Listing 112.05D, a claimant must show that he or she has a "valid verbal, performance, or full scale I.Q. of 60 through 70 *and* a physical or other mental impairment imposing additional and significant limitation of function." [30] Therefore, to meet the level of severity for Listing 112.05D, the child must satisfy a two-prong test: (1) the child must establish the required I.Q.; and (2) the child must show another impairment imposing "additional and significant limitation of function." [31] For Listing 112.05D, the Commissioner assesses the degree of functional limitation the additional impairment imposes to determine if it causes more than minimal functional limitations, i.e., is a "severe" impairment, as defined in 20 C.F.R. § 416.924(c). [32] If the additional impairment does not cause limitations that are "severe" as defined in 20 C.F.R. § 416.924(c), the court will not find that the additional impairment imposes an additional and significant limitation of function. [33] A finding that a child has an additional impairment (besides low I.Q.), and that this impairment is "severe" under 20 C.F.R. § 416.924(c), means that the impairment satisfies the Listing 112.05D requirement of an impairment imposing an "additional and significant limitation of function."

---

27. 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.00A (2001).

28. 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.05 (2001).

29. *Id.*

30. *Id.* § 112.05D (emphasis added).

31. *Id.*

32. 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.00A (2001).

33. *Id.*

In this case, the ALJ found that Cathy has mild mental retardation with a verbal I.Q. score of 71, Performance I.Q. score of 69, and Full Scale I.Q. score of 68. (Tr. 17) She therefore met the first prong of the Listing. As to the second prong of the Listing, he concluded, however, that she "has an asthmatic condition which is found to be not severe as it results in no more than minimal functional limitations." (Tr. 17)

Here, the issue is whether Cathy's claimed additional impairment of asthma is a "severe" impairment, and, as such, qualifies as an additional and significant limitation of function under Listing 112.05D. Section 416.924(c) defines a "severe" impairment as one that causes more than minimal functional limitations.[34]

In his decision, the ALJ found that although Cathy has a history of asthma, nothing in the evidence of record indicates that her asthma is severe. (Tr. 21) The ALJ noted that, according to her teachers, Cathy is able to stand, walk, run, jump, and balance without any problems. (Tr. 21) The ALJ also noted that Cathy has not been hospitalized as an inpatient during the period in question and was last hospitalized as an inpatient for asthma symptoms about five years ago. (Tr. 22) The ALJ also reported that Children's Mercy treatment notes made reference to her playing basketball. (Tr. 22) The ALJ found that Plaintiff's claim that one of Cathy's physicians had advised Cathy to stop playing basketball was not supported by the record. (Tr. 22) Additionally, the ALJ found that Cathy's use of a breathing machine when symptoms arise does not present a significant problem and does not interfere or interrupt activities in school and other settings. (Tr. 22)

The Court has reviewed the record and determines that substantial evidence in the record supports the ALJ's determination that Cathy's asthma is not severe. The ALJ properly noted that reports from Cathy's teachers were inconsistent with her claim of severe asthma. (Tr. 21–22) Reports prepared by Cathy's teachers indicated that she had no physical limitations. (Tr. 110, 115) Cathy attended regular physical education classes. (Tr. 130) The ALJ properly gave significant weight to the observations of Cathy's teachers and other school personnel as individuals with knowledge of any significant physical limitations due to her asthma. (Tr. 21–22) The ALJ properly noted that Cathy's hospital reports were not consistent with severe asthma. (Tr. 21–22) He also properly observed that the medical treatment notes indicating that Cathy complained of becoming short of breath while playing basketball do not reflect that her doctors told her not to play. (Tr. 32) In addition, the ALJ properly noted that Cathy had not been hospitalized for asthma in five years. (Tr. 22, 215)

The Court also finds the fact that Plaintiff indicated Cathy's asthma was "under control" in the Disability Report (Tr. 74), which was filled out in conjunction with her daughter's application for benefits, supports the ALJ's determination that Cathy's asthma is not severe. This was not the only place in the record that Plaintiff indicated that Cathy's asthma had negligible effect on her physical abilities. Plaintiff also checked the "No" box in response to the April 16, 2000 Function Report question "Are the child's physical abilities limited?" (Tr. 91) A review of the medical records reveals that Cathy has been treated occasionally for asthma during the relevant period, primarily with inhalers and Prelone for flare-ups. Although the medical records indicate Cathy's asthma requires treatment

---

34. 20 C.F.R. § 416.924(c) (2001).

with inhalers, this alone does not establish that her asthma is a severe impairment. Section 416.930 requires a child claimant to follow the treatment prescribed by his or her physician if the treatment can reduce the child's functional limitations so that they are no longer marked and severe.[35] When an impairment can be controlled by medication, a claimant is not disabled unless he or she has a justifiable reason for refusing to take the medication.[36]

■ Plaintiff also argues that the ALJ erred by failing to consider the Social Security Administration's indication in its Notice of Reconsideration that Cathy's impairments are severe. The Notice of Reconsideration, dated July 5, 2000, states as follows:

> You said that Cathy is disabled because of learning disabilities (she doesn't comprehend what she reads), asthma that is under control and has asthma attacks when she is running or playing. The medical evidence shows that Cathy has a history of learning problems and asthma. *Her impairment [sic] are severe,* but do not meet the requirements for disability benefits. She is able to think, act and communicate her needs in an age appropriate manner. We have determined that Cathy's overall medical condition does not result in marked or severe functional limitations.

(Tr. 48) (emphasis added).

Although not clear, the Commissioner's July 5, 2000 Notice of Reconsideration appears to suggest that at least one of Cathy's impairments is severe. Even if the Commissioner intended to state that both her learning problems and asthma are severe as defined by 20 C.F.R. § 416.924(c), the inclusion of this statement is not binding on the ALJ's review. The regulations provide that after an adverse reconsideration determination, the claimant is entitled to a hearing by the Commissioner and may request a de novo hearing before an ALJ.[37] Failure to request a hearing before an ALJ renders the adverse reconsideration a final decision.[38]

In this case, Plaintiff timely requested a hearing before an ALJ (doc. 52). Thus, upon her timely request for a hearing before an ALJ, the Commissioner's Notice of Reconsideration did not become a final and binding determination. The ALJ, therefore, was not bound by the statements set forth in the Commissioner's Notice of Reconsideration.

In addition, Plaintiff argues that, with respect to her asthma, the ALJ failed to mention that the report of state agency medical consultant, Dr. Alan L. Cowles, M.D., Ph. D., stated that Cathy's motor impairment is less than marked. (Tr. 209–10) This comment was included in Dr. Cowles' report attached to the Childhood Disability Evaluation Form dated June 29, 2000. (Tr. 206–11)

■ While the record must demonstrate that the ALJ considered all of the evidence and discussed the evidence supporting his decision, the uncontroverted evidence not relied upon, and any significantly probative evidence rejected, the ALJ need not discuss every piece of evidence.[39] In short, the ALJ need only pro-

---

**35.** 20 C.F.R. § 416.930 (2001).

**36.** *Rushing ex rel. Rushing v. Massanari,* 159 F.Supp.2d 1315, 1319 (D.Kan.2001) (citations omitted).

**37.** 42 U.S.C. §§ 405(b)(1), 421(d), 1383(c)(1) (2001).

**38.** *Schoolcraft v. Sullivan,* 971 F.2d 81, 83 (8th Cir.1992).

**39.** *Clifton v. Chater,* 79 F.3d 1007, 1009–10 (10th Cir.1996)

vide a sufficient discussion as to allow for meaningful review by the court.[40]

 Although the ALJ did not specifically discuss Dr. Cowles' report in his decision, the Court determines that his failure to do so in this case is not reversible error. Even though his report concludes that Cathy's motor impairment is "less than marked," this is consistent with the ALJ's determination that Cathy's asthma is not severe. The analysis section of Dr. Cowles' report is also consistent with the ALJ's determination that Cathy's asthma is not severe:

> Four pieces of evidence indicate that Cathy's physical condition is good and that her asthma causes minimal functional impairment: (1) Minimal treatment has been required. (2) Her examination findings have been essentially normal. (3) Her teacher has reported no physical limitations. (4) Her mother initially reported no physical limitations. The claim that Cathy has had an asthma attack is credible, and asthmatic tendency can be expected to continue, but nevertheless her asthma, at most, is a less-than-marked impairment. Her medication should cause little or no impairment.

(Tr. 209)

Where Dr. Cowles' opinion is consistent with the ALJ's decision, consistent with the opinions of Cathy's teachers, and consistent with the medical record, the Court finds no error in the ALJ's mere failure to mention Dr. Cowles' report in his decision.

Keeping in mind the standard of review, which precludes this Court from reweighing the evidence or substituting its discretion for that of the Commissioner,[41] the Court concludes that substantial evidence in the record as a whole supports the ALJ's determination that Cathy's asthma causes no more than minimal functional limitations, and is, therefore, not "severe" as defined in 20 C.F.R. § 416.924(c). Accordingly, Cathy's asthma does not qualify as an "additional and significant limitation of function" under the second required prong of Listing 112.05D.

*2. Whether Cathy's alleged learning disability qualifies as an additional and significant limitation for purposes of Listing 112.05D*

 Plaintiff also argues that her daughter has a learning disability which may be an additional and significant limitation for purposes of meeting the second prong of Listing 112.05D. The Commissioner argues that this is really Plaintiff's attempt to count Cathy's mental retardation twice to satisfy the requirements of the Listing.

Other courts addressing this issue have held that the term "additional and significant limitation of function" means another distinct and separate diagnosable impairment.[42] These other courts have acknowledged that another distinct diagnosable impairment could be a learning disability or disorder.[43] In an unpublished decision,

**40.** *Id.*

**41.** *Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir.2000) (citing *Casias v. Sec'y of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991)).

**42.** *Hall v. Apfel,* 122 F.Supp.2d 959, 967 (N.D.Ill.2000); *Lugo v. Barnhart,* No. 02 c 50361, 2003 WL 22025011, at *9 (N.D.Ill. Aug.28, 2003); *see also Michael v. Apfel,* No.

C–9903936–CRB, 2000 WL 1006534, at *6 (N.D.Cal. July 7, 2000) (Although a reading disorder may be considered a separate disability, plaintiff's disorder overlapped significantly with his mental retardation and did not create a significant additional restriction on his work abilities).

**43.** *Hall,* 122 F.Supp.2d at 967; *Lugo,* 2003 WL 22025011, at *9.

the Tenth Circuit has addressed whether an adult claimant could assert his learning disabilities as an additional and significant limitation of function for meeting the second prong of Mental Retardation Listing 12.05C.[44] In that case, the Tenth Circuit held that evidence of an adult claimant's illiteracy, inability to understand and remember instructions, inability to interact appropriately with the public, inability to work under stressful conditions, inability to use good judgment, and limited intellectual capacity were symptoms of claimant's mental retardation, and, as such, did not satisfy the claimant's obligation to show an additional impairment meeting the second prong of Mental Retardation Listing 12.05C.[45]

In this case, there is no evidence in the record that Plaintiff ever asserted to the Commissioner that Cathy's alleged learning difficulties should be considered as an additional and significant limitation to satisfy the second requirement of Listing 112.05D. Moreover, nothing in the record suggests that Cathy's alleged learning difficulties are anything other than mere symptoms or manifestations of her low I.Q. While this Court acknowledges that a learning disorder could be an additional and significant limitation of function for purposes of satisfying Listing 112.05D, the symptoms of which Plaintiff complains are not a distinct and separate diagnosable impairment, but rather are symptoms and manifestations of her low I.Q.[46] As Plaintiff has failed to establish that Cathy's learning disorder is a distinct diagnosable disor-

der rather than a symptom or manifestation of her low I.Q., it does not qualify as an additional and significant limitation of function for meeting the second prong of Mental Retardation Listing 112.05D.

## V. Conclusion

For the reasons set forth above, the Court determines that substantial evidence in the record as a whole supports the ALJ's decision, in which he determined that Cathy is not disabled within the meaning of the Social Security Act. Accordingly, the decision of the Commissioner is affirmed.

IT IS THEREFORE ORDERED that the decision of the Commissioner denying Plaintiff's application, on behalf of her minor daughter, for SSI benefits under Title XVI of the Social Security Act is affirmed. This decision will dispose of this case, including Plaintiff's Complaint (doc. 1), which has been considered a petition for review.

IT IS SO ORDERED.

---

44. *Franklin v. Chater,* 104 F.3d 367 (table), 1996 WL 731591, at *3 (10th Cir. Dec.20, 1996) (unpub.).

45. *Id.*

46. *See Buckner v. Apfel,* 213 F.3d 1006, 1012 (8th Cir.2000) (adult claimant's alleged learning disorder impairment, asserted as an "additional and significant limitation" to meet Listing 12.05C, did not qualify as an "additional and significant limitation" under the Listing but was merely a symptom or manifestation of claimant's mental retardation).