FILED
United States Court of Appeals
Tenth Circuit

November 16, 2022

Christopher M. Wolpert
Clerk of Court

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

CHESTER CRELLER,

    Petitioner - Appellant,

v.

SCOTT CROW,

    Respondent - Appellee.

No. 22-6062
(D.C. No. 5:20-CV-01059-PRW)
(W.D. Okla.)

_____

## ORDER DENYING CERTIFICATE OF APPEALABILITY*
_____

Before **MORITZ**, **BRISCOE**, and **CARSON**, Circuit Judges.
_____

In 2020, Petitioner Chester Creller filed a pro se habeas petition challenging his 2001 convictions under 28 U.S.C. § 2254.  The district court dismissed his petition as time barred and denied his application for a certificate of appealability (COA).  Petitioner now requests a COA.  Because no reasonable jurist would debate the district court's dismissal, we deny Petitioner's application for a COA and dismiss his appeal.

---

    * This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.

In May 2001, a jury convicted Petitioner of first-degree rape, forcible oral sodomy, and incest.[1]  He unsuccessfully moved for post-conviction relief in state court three times between 2003 and 2016.  He then filed a federal habeas petition in 2020, raising nine claims: that his state trial denied him (1) due process of law, the right to a fair trial, and equal protection under the law by allegedly having a biased judge preside; (2) due process of law, the right to a fair trial, equal protection under the law, and the right against self-incrimination by admitting his confession into evidence that he claims the state coerced him into making about other crimes that it later used to prove his guilt for the charged crimes; (3) due process of law and the right to confront his accuser because the judge allowed the state to set up a chalkboard in between Petitioner and the victim during the victim's testimony; (4) due process of law and equal protection under the law because the prosecutor allegedly knowingly lied to the jury during the trial; (5) due process of law, equal protection under the law, the right to a fair trial, and the right to effective assistance of counsel because his trial counsel allegedly did not interview or call witnesses and made statements to the jury implying his guilt; (6) due process of law and equal protection under the law by having ineffective appellate counsel for his direct appeal; and (7) due process of law and equal protection under the law from introducing prejudicial evidence at trial that had no probative value.  On top of all that, Petitioner

---

[1] In 2004, the Oklahoma Court of Criminal Appeals reversed and remanded with instructions to dismiss Petitioner's incest conviction for violating double jeopardy in his first direct appeal.

argues he has been denied (8) due process of law because the trial court refused to consider a letter allegedly written by the victim after the trial that proved his innocence and (9) that all of this proves he is actually innocent.

The magistrate judge reviewed the petition and recommended the district court dismiss it as time barred. Petitioner's state court judgment became final on December 20, 2002, but he did not seek federal habeas relief until October 19, 2020—almost eighteen years later. Because Petitioner failed to file his habeas petition within one year from the time "the [state court] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A), the magistrate judge determined that his time to file a federal habeas petition had expired. Thus, the magistrate judge noted, without statutory or equitable tolling, Petitioner sought federal habeas relief too late.

The magistrate judge first determined that Petitioner was not entitled to any more statutory tolling. Petitioner's first state court appeal, filed in 2003, tolled his time to file a habeas petition. See 28 U.S.C. § 2244(d)(2). But by 2004, his statute of limitations period began to run again, and Petitioner soon missed his window to move for habeas relief. So that left the magistrate judge to consider equitable tolling. To equitably toll his limitations period, Petitioner needed to establish that he pursued his rights diligently, but an extraordinary circumstance stood in his way and prevented timely filing. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). The magistrate judge determined that Petitioner failed to allege that some circumstance prevented him from timely filing his petition. The magistrate judge also acknowledged that actual innocence may provide an exception

to the limitations period in rare instances.  But it rejected Petitioner's actual innocence argument because Petitioner could only point to years-old evidence that could allegedly prove his innocence (and only legal, not factual, innocence at that), making his 2020 petition still too late.[2]  The magistrate judge recommended, then, that the district court decline to review the merits and dismiss the petition.

Petitioner objected to the magistrate judge's report and recommendation.  In his objection, he raised a new argument: that limited law library access hindered his ability to file a habeas petition.  Petitioner claimed that he never stepped foot in a law library until 2012 because he had no access to one before then, and even once he did gain access, he did not have enough legal understanding to piece together his petition until a legal assistant began helping him in 2015.  His access to the law library became limited again when the COVID-19 lockdowns started in 2020.  But, Petitioner insisted, he did not "sit idle" during the times he could not access the law library.  For example, he claimed that he moved to produce documents about his convictions in preparation for challenging his convictions with help from the Mid-Western Innocence Project (later his case was moved to the Oklahoma Innocence Project).  And even after he "split" with the innocence project organizations, he still applied to receive DNA testing about his rape conviction. He also claimed to have discovered new evidence on the law library computer in 2016 that he included in his post-conviction application.

---

[2] We later clarified that "new evidence" for an actual innocence claim means newly presented evidence, not newly discovered.  See Fontenot v. Crow, 4 F.4th 982, 1032 (10th Cir. 2021).  Thus, a lack of diligence is not fatal to an actual innocence claim. See id.

Besides explaining his untimely petition, Petitioner objected to the magistrate judge's consideration of the new evidence he presented. He accused the magistrate judge of only considering one of the four pieces of new evidence he had presented in his petition—a letter Petitioner received from the victim in 2012. According to Petitioner, the magistrate judge ignored (1) a response from the state about a doctor who examined the victim, attributing her injuries to an "in-home accident," not sexual abuse; (2) an affidavit from his youngest son who attested that he never witnessed the physical or sexual abuse that the state accused Petitioner of committing; and (3) events during the trial that proved the presiding judge harbored bias against him. Petitioner explained how all four pieces of new evidence show that had the jury considered this evidence at trial, it would not have convicted him and therefore the court's unwillingness to consider the merits of his petition would result in a miscarriage of justice.

The district court adopted the report and recommendation. It agreed with the magistrate judge's determination that Petitioner's limitations period had run, and Petitioner had not shown he diligently pursued his claims to warrant equitable tolling. Nor had Petitioner demonstrated actual innocence. The district court did not consider Petitioner's explanation for why he could not timely file because he did not include the explanation in his original petition. Plus, the district court noted, Petitioner failed to adequately justify his delay anyway because he raised "primarily" the same claims in his applications for post-conviction relief, "undercutting" his argument that lack of law library access caused the delay. So the district court dismissed the habeas petition and denied Petitioner a COA. Petitioner now asks us to grant him a COA.

II.

We will issue a COA only if a petitioner has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This means the petitioner "must show that the district court's resolution of the constitutional claim was either debatable or wrong." Laurson v. Leyba, 507 F.3d 1230, 1232 (10th Cir. 2007) (quotation omitted). And when a district court dismisses on procedural grounds, the petitioner must also show that a reasonable jurist could find the procedural dismissal debatable. Id. Thus, when a district court dismisses on procedural grounds, an applicant faces a "double hurdle" to relief. Id. In determining whether to grant a COA, courts should resolve procedural issues first whenever possible. See Slack v. McDaniel, 529 U.S. 473, 485 (2000) (citation omitted).

Petitioner did not object to the magistrate judge's finding that the limitations period expired in 2004, years before he filed his habeas petition in 2020. Petitioner instead focused his objection on explaining why he untimely filed his petition, arguing he is entitled to equitable tolling because newly discovered evidence shows he is actually innocent but inadequate access to a law library delayed his ability to file a habeas petition. Because Petitioner sought federal habeas relief too late, he must prove he is entitled to equitable tolling or can show actual innocence to receive a COA. We address each exception in turn.

A.

To equitably toll the limitations period to move for habeas relief, Petitioner must establish that he pursued his rights diligently, but an extraordinary circumstance stood in

6

his way and prevented timely filing. Pace, 544 U.S. at 418. Petitioner explained his reasons for untimely filing his petition but did so for the first time when he objected to the report and recommendation. So he waived arguments attempting to prove his diligence and extraordinary circumstances not raised until his objections. See Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996) (citations omitted) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."). Thus, we need not address the equitable tolling issue. Id. And because none of the arguments we could address about this issue (because he raised them in his initial petition) show his diligence or extraordinary circumstances that prevented him from timely filing, a reasonable jurist would not debate whether Petitioner is entitled to equitable tolling.

B.

Actual innocence can also serve as an exception to an expired limitations period. Fontenot v. Crow, 4 F.4th 982, 1030 (10th Cir. 2021). "When used to overcome procedural issues," an actual innocence showing serves as a "gateway through which a petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Id. at 1029–30. But for a court to apply this exception, Petitioner must show that "more likely than not[,] any reasonable juror would have reasonable doubt" about Petitioner's convictions considering the new evidence he has presented in his petition. Id. at 1030 (quoting House v. Bell, 547 U.S. 518, 538 (2006)).

This is a demanding standard. Id. at 1031 (citation omitted). And this "new evidence" must also be reliable evidence not introduced at trial, although the habeas court

7

need not consider whether the evidence would be admissible at this gateway stage. Id. at 1031–32. The habeas court should consider this new evidence within the context of all the evidence—old and new, incriminating and exculpatory. Id. The new evidence must prove factual, not legal, innocence. Laurson, 507 F.3d at 1233 (citing Bousley v. United States, 523 U.S. 614, 623 (1998)). While lack of diligence in developing the new evidence does not disqualify that evidence from supporting an actual innocence claim, the petitioner's untimeliness factors into whether the petitioner has "reliably shown" actual innocence. Fontenot, 4 F.4th at 1033 (citations omitted). Finally, because an actual innocence claim requires us to consider the law and facts, we review it de novo. Id. at 1034.

As the magistrate judge noted, Petitioner's actual innocence argument—his ninth claim for relief in his petition—did not specify any new evidence proving he is actually innocent. Rather, this last claim for relief pointed to constitutional errors that allegedly occurred during his trial, rendering his conviction unconstitutional, according to Petitioner. Petitioner made a legal argument for his innocence, not a factual one, defeating his ability to obtain relief under his ninth claim. See Laurson, 507 F.3d at 1233 (citing Bousley v. United States, 523 U.S. 614, 623 (1998)). But elsewhere in his petition, Petitioner alleged four new pieces of evidence which he claims prove his actual innocence, the same four he mentioned in his objection to the report and recommendation. As a reminder, that evidence includes: (1) the recusal of his trial judge; (2) a report from the doctor who examined the victim, attributing her injuries to an "in-home accident," not sexual abuse; (3) a letter Petitioner received from the victim—his

daughter—in 2012; and (4) an affidavit from his youngest son who attested that he never witnessed the physical or sexual abuse that the state accused Petitioner of committing. The first one does not qualify as new evidence while the other three do not sufficiently show actual innocence. Thus, the lack of new evidence showing actual innocence precludes him from prevailing under this exception.

Petitioner asked the judge who presided over the 2001 trial to recuse himself from hearing Petitioner's application for DNA testing; that judge agreed to do so "due to incidents that occurred at trial." Petitioner argues the recusal, especially the reason for recusing, proves the judge harbored a bias against him and counts this as one piece of "newly discovered evidence" proving his innocence. But Petitioner admits the recusal does not "deal with evidentiary issues," and thus reserves that fact for another part of his petition. Because the judge's recusal does not prove factual innocence, as Petitioner appears to concede, this piece of evidence cannot satisfy the demanding actual innocence standard.

Petitioner's next piece of evidence consists of a response he received about the forensic evidence he claims the state used to convict him. In 2014, Petitioner applied for forensic DNA testing of biological materials supporting his convictions. But the state found no biological materials to test, determining that the jury convicted Petitioner "based on his voluntary statement" and medical testimony, rather than forensic evidence. While running through all his requests for DNA testing, the state noted that Petitioner asked for DNA evidence from a hospital visit for the victim months before the state accused Petitioner of sexually abusing her. The state found that it could not conduct a

DNA forensic test from this hospital visit because the doctor treated her for an "in-home accident," not abuse, and thus law enforcement did not collect DNA during this visit. In another part of his petition, Petitioner claims that the doctor who examined the victim ended up testifying at trial that this hospital visit occurred from the victim suffering a sexual assault. The record does not support that the doctor testified to this at trial, but the record does support that a doctor later examined the victim for sexual abuse and found "significant" physical features on her body suggesting she had suffered such abuse. The state's response to Petitioner confirmed that the doctor's testimony spoke to a later examination where he found evidence of her experiencing sexual abuse. Overall, this response does not make it "more likely than not [that] any reasonable juror would have reasonable doubt" about Petitioner's convictions. Fontenot, 4 F.4th at 1030 (quotation omitted). In fact, the state's response reinforces Petitioner's conviction because it points both to his confession and the doctor's examination confirming the victim's physical signs of sexual abuse.

Petitioner also claims a letter the victim—his daughter—sent him in 2012 proves he is actually innocent of sexually abusing her. In the letter, the victim supposedly asked Petitioner to admit to sexually abusing her in ways not addressed at trial. Petitioner speculates that if she had made these allegations at trial, no juror would have found him guilty beyond a reasonable doubt because he claims a physical exam disproved one of her allegations, discrediting her testimony. To start, the letter Petitioner mentions in his petition is not the same letter he attaches as an exhibit to his brief. Petitioner claims someone else lost the letter with unsupported allegations against him. So Petitioner

10

apparently expects us to take his word for it that the victim made false allegations that he could disprove from medical exams. This does not meet the demanding actual innocence standard. Plus, the letter was not an affidavit; the victim wrote this private letter so she could "move on" from the trauma Petitioner caused her to suffer. So even if the victim made allegations in that letter that the trial evidence did not corroborate, that does not suggest that "more likely than not[,] any reasonable juror would have reasonable doubt" about Petitioner's conviction. Fontenot, 4 F.4th at 1030 (quotation omitted).

Last, Petitioner points to an affidavit his son submitted in 2016 attesting that Petitioner never beat him or sexually abused his sister and generally corroborating Petitioner's version of events explaining his innocence. The affidavit is Petitioner's strongest piece of evidence, but still does not present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial . . . ." Fontenot, 4 F.4th at 1031 (quotation omitted). Petitioner's son submitted this affidavit seventeen years later, recalling early childhood experiences. Although the untimeliness of this affidavit does not defeat an actual innocence claim, a reasonable juror could question the affidavit's credibility given the passage of time. See Fontenot, 4 F.4th at 1033–1034 (quotation omitted) (explaining that untimeliness "does bear on the credibility of evidence proffered to show actual innocence"). Because other evidence at trial, such as Petitioner's confession and medical testimony, demonstrated Petitioner's guilt, we cannot say that "more likely than not[,] any reasonable juror would have reasonable doubt" about Petitioner's convictions after reading the affidavit. Id. at 1030 (quotation omitted).

11

None of Petitioner's new evidence meet the actual innocence standard. Nor did Petitioner present evidence in his petition to warrant equitable tolling. Taken together, these failures mean Petitioner cannot excuse the fact that he missed the one-year statutory deadline to move for federal habeas relief. Thus, a reasonable jurist would not debate whether the district court correctly dismissed the petition as time barred. Laurson, 507 F.3d at 1232 (citation omitted). We therefore deny Petitioner's application for a COA and dismiss the appeal.

DENIED and DISMISSED.

Entered for the Court

Joel M. Carson III
Circuit Judge